**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATT HOSSEINZADEH,

*Plaintiffs*,

– against –

ETHAN KLEIN and HILA KLEIN,

*Defendant*s.

**Civ. Action No**.: 16-cv-3081 (KBF)
**ECF Case**

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

THOMPSON BUKHER LLP
75 Broad Street, Suite 2120
New York, New York 10004
(212) 920-6050

*Attorneys for the Plaintiff*

## **Table of Contents**

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ........................................................................... 2

ARGUMENT ................................................................................................... 7

    A.   Plaintiff Properly Alleged A Valid Copyright In His Work ............................ 8

        1.   The Defendants' attack on the Registration Certificate stems from their misunderstanding of the term "publication" as used in the Copyright Act. ................................................................................ 9

        2.   The Registration Certificate was registered with the express advice of the Copyright Office and therefore satisfies the requirements of Section 411. ...................................................................... 14

        3.   Mr. Hoss's submissions to the Copyright Office were made in accordance with 37 C.F.R. § 202.3(b)(4)(i)(B)(1). ......................... 16

    B.   Plaintiff's Second Claim For Relief (DMCA Misrepresentation) Pleads A Valid Cause Of Action ................................................................... 17

CONCLUSION ............................................................................................. 19

i

# TABLE OF AUTHORITIES

## Cases

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................................. 8

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ................................................. 8

*Einhorn v. Mergatroyd Prods.*, 426 F. Supp.2d 189, 197 (S.D.N.Y. 2006) ................................ 10

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991) ................................................. 8

*Fona Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) ................................................. 9

*Getaped.com, Inc. v. Cangemi*, 188 F.Supp.2d 398, 401 (S.D.N.Y. 2002) ................................ 13

*Kay Berry, Inc. v. Taylor Gifts*, Inc., 421 F.3d 199, 206 n.2 (3d Cir. 2005) ................................ 12

*McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481(JSR), 2010 U.S. Dist. LEXIS 120185, at *1 (S.D.N.Y. Nov. 9, 2010) ................................................. 10, 12

*Morris v. Business Concepts*, Inc., 283 F.3d 502, 505-06 (2d Cir. 2002) ................................ 12

*Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) ................................ 8

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ................................................. 8

*Wynder v. McMahon*, 360 F.3d 73, 78 n. 8 (2d Cir. 2004) ................................................. 8

## Statutes

17 U.S.C. § 101 ................................................. 10

17 U.S.C. § 408 ................................................. 15

17 U.S.C. § 411 ................................................. 9, 14, 15, 16

17 U.S.C. § 512 ................................................. 18

37 C.F.R. § 202.3(b)(4)(i)(B)(1) ................................................. 16, 17

## Other

Circular 6: Obtaining Access to and Copies of Copyright Office Records and Deposits, U.S. Copyright Office, Apr. 4, 2016, http://www.copyright.gov/circs/circ06.pdf ................................ 17

Compendium III: Compendium of Office Practices which at § 1008.3(F) ................................ 10, 15, 16

M. Nimmer and D. Nimmer, Nimmer on Copyright § 4.07 (2001) ............................................. 13

Section 5, "Terms of Service," YouTube, Jun. 9, 2010,
  https://www.youtube.com/static?template=terms ................................................................ 12

Plaintiff Matt Hosseinzadeh ("**Mr. Hoss**") submits this memorandum of law in opposition to the motion of defendants Ethan Klein ("**Mr. Klein**") and Hila Klein ("**Ms. Klein**") (collectively the "**Defendants**") to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Mr. Hoss is a filmmaker who maintains a portfolio of his work on his YouTube.com channel where, in order to promote his reputation as an artist, he allows Internet users to stream, but not to download, copy, or otherwise purchase, his work. Mr. Hoss holds a copyright registration in his work as a collection of unpublished works. Mr. Hoss has sued the Defendants because they copied Mr. Hoss's work in violation of his exclusive rights as an author.

The Defendants have responded to this lawsuit by moving to dismiss Mr. Hoss's Amended Complaint on the basis that his copyright registration should be invalidated. The Defendants argue that the individual works comprising Mr. Hoss's registered collection of the unpublished works have, prior to the application, been published on YouTube. The Defendants therefore argue that filing this case was "an act of extreme negligence by Plaintiff and his counsel or, in the worst case scenario, a deliberate act of fraud on the Copyright Office and this Court." The Defendants devote the remainder of their memorandum to pointing out the various "errors" and "gaffes" in Mr. Hoss's copyright application and this case.

Respectfully, the Defendants have misread the Copyright Act. The definition of

"publication" within the meaning of the Copyright Act, in contrast to its use in the vernacular, requires specific actions on the part of the author amounting to the "sale or other transfer of ownership, or by rental, lease, or lending" of the work to the public.  17 U.S.C. § 101.  In 2014 the United States Copyright Office published a new edition of the Compendium of Office Practices, presumably to address evolution on modern technology, confirming that the online streaming of a work, such as streaming via YouTube, does not constitute "publication" within the meaning of the Copyright Act. Likewise, during the process of Mr. Hoss's copyright application, the Copyright Office corresponded directly with Mr. Hoss and explicitly informed him that his prior display of the work on YouTube did not constitute "publication' within the meaning of the Copyright Act.  In fact, when Mr. Hoss initially sought to register his work as a collection of published works, the Copyright Office specifically pushed him to register the work as an unpublished collection.  Thus the Copyright Office issued Mr. Hoss a valid copyright registration.

## FACTUAL BACKGROUND

### Plaintiff's Copyright Registration

Mr. Hoss is a recognized filmmaker with a loyal and wide cult following.  Mr. Hoss displays his original creative film and music productions on the popular YouTube.com ("**YouTube**") channel having the name "MattHossZone" (accessible at https://www.youtube.com/user/MattHossZone).  (Am. Compl. ¶ 3.)  The MattHossZone serves as Mr. Hoss's artistic portfolio which, by public displaying his creative work, he

hopes to garner the attention of professional film studios as a potential director and producer of feature works.  (Hosseinzadeh Decl. ¶ 6.)

Online streaming via YouTube comprises Mr. Hoss's sole public display of his creative works including the individual work titled "Bold Guy 12 Parkour Girl" (the "**Work**") which is at issue in this matter.  (Hosseinzadeh Decl. ¶ 9.)  To date, Mr. Hoss has not distributed any of his work, including the Work, to the public for download "by sale or other transfer of ownership, or by rental, lease, or lending."  *See* 17 U.S.C. § 101 (defining "Publication" pursuant to the U.S. Copyright Act of 1976).  (Hosseinzadeh Decl. ¶ 8.)  Nor has Mr. Hoss ever offered to distribute any of his works, including the Work, "for purposes of further distribution, public performance, or public display." (Hosseinzadeh Decl. ¶ 9.)

Mr. Hoss has registered and is the sole owner of the copyright and all other rights in and to the creative motion picture collection of works titled "The Bold Guy & Horny Tony Volume 1" (U.S. Copyright Reg. No. Pau 3-770-968) (the "**Collection**") which collection includes the individual Work.  (Am. Compl. ¶ 10.)  A copy of the registration certificate for the Collection (the "**Registration Certificate**") is annexed to the Declaration of Matt Hosseinzadeh at <u>Exhibit A</u>.  (Hosseinzadeh Decl. ¶ 11, Ex. A.)

As part of the copyright registration process, Mr. Hoss deposited his works to the Copyright Office in the form of Quicktime files of the full works comprising the Collection.  (Hosseinzadeh Decl. ¶ 12.)  He initially sought to register the Collection as a collection of published works.  (Hosseinzadeh Decl. ¶ 13.)  During the course of registering the Collection with the U.S. Copyright Office, Mr. Hoss received email

correspondence from Registration Specialist Gareth James of the U.S. Copyright Office inquiring about the publication date of the works forming the Collection.  (Hosseinzadeh Decl. ¶ 14.)  Copies of Mr. Hoss's correspondence with the Copyright Office regarding the registration of the Collection are annexed to the Declaration of Matt Hosseinzadeh at Exhibit B.  (Hosseinzadeh Decl. ¶ 15, Ex. B.)

In its correspondence with Mr. Hoss, the Copyright Office stated that the "application gives a publication date, but it is not clear whether the videos [Mr. Hoss] uploaded have been published."  (Hosseinzadeh Decl. ¶ 15, Ex. B.)  The Copyright Office directed Mr. Hoss to Compendium III: Compendium of Office Practices § 1008.3(F) which provides that, with respect to creative work streamed online, "[i]f a work is made available on a website only by streaming and not for download, it is not published."  (Hosseinzadeh Decl. ¶ 15, Ex. B.)

Mr. Hoss explained to the to the Copyright Office that the works forming the Collection "are episodes of a web series that has been published on YouTube … [t]he entry form on [the Copyright Office] website only had one field for publication, so I wasn't sure exactly what dates to use since it's a series with ongoing publication dates."  (Hosseinzadeh Decl. ¶ 15, Ex. B.)  The Copyright Office responded that "as detailed in the Compendium link I provided, the Youtube uploads could be viewed as a public performance or display of the works, which is not by itself considered publication under the copyright law.  If there was some other release (in hard copy format or by sale of permanent digital copies), then they would be considered published, however if not, **then you could register [the Collection] as an unpublished collection**."  (Hosseinzadeh

Decl. ¶ 15, Ex. B.) (**emphasis added**).  Mr. Hoss responded that the works forming the Collection were not available for sale in any such medium.  (Hosseinzadeh Decl. ¶ 15, Ex. B.)

The Copyright Office encouraged Mr. Hoss to register the Collection, and ultimately registered the Collection, as an unpublished collection with full knowledge of the publication status of all of the works forming the Collection.  (Hosseinzadeh Decl. ¶ 17, Ex. B.)  The Copyright Office issued the Registration Certificate in accordance with its own interpretation and guidance on the meaning of "publication" under the Copyright Act.  (Hosseinzadeh Decl. ¶ 18.)

*Willful and Malicious Infringement by the Defendants*

On or about February 15, 2016, the Defendants published a video on their own YouTube channel that copied and displayed virtually all of Mr. Hoss's original Work which formed a part of the registered Collection (the "**Infringing Video**").  (Am. Compl. ¶ 16.)  The Infringing Video featured the Defendants purporting to discuss the Work in what they believed to be a humorous manner but in fact reproduced virtually all of the Work as nothing more than a prop in the Defendants' comedy routine.  (Am. Compl. ¶ 17.)  The Infringing Video was created and published without license from Mr. Hoss.  (Am. Compl. ¶ 18.)

Initially, Mr. Hoss reached out to the Defendants by email to request that they remove the Infringing Video and cease future infringement of the Work.   (Am. Compl. ¶ 24.)  The Defendants responded that they would not remove the Infringing Video, that the Infringing Video was a "fair use" under the Copyright Act, and that Mr. Hoss should

contact the Defendants' attorney.  (Am. Compl. ¶ 25.)  Thus Mr. Hoss was forced to engage his own counsel to explain to the Defendants that a non-transformative use of virtually all of an artist's creative work, regardless of the relative size the Defendants' Infringing Video, was not in fact a "fair use" as defined in the Copyright Act. (Hosseinzadeh Decl. ¶ 24.)

During the course of these discussions, Defendants had refused to remove the Infringing Video from YouTube, instead designating it as a "private" video on YouTube—as admitted in Defendant's Memorandum of Law in support of this motion. (Def.'s Mem. Mot. Dismiss 3; Hosseinzadeh Decl. ¶ 25.)  Thus Mr. Hoss properly issued YouTube a takedown notice pursuant to 17 U.S.C. § 512(c) (the Plaintiff's "**DMCA Takedown Notice**") in order to remove the unauthorized copies of Mr. Hoss's work which were still hosted on the Defendants' YouTube account.  (Hosseinzadeh Decl. ¶ 26.)  The Defendants responded to the DMCA Takedown Notice by wrongfully filing a counter-notification with YouTube in which they affirmed under penalty of perjury that the Infringing Video was improperly removed because it was, among other reasons, a fair use and "noncommercial."  (Am. Compl. ¶ 33; Hosseinzadeh Decl. ¶ 27)  Finally, unable to reach an agreement with the Defendants to settle this matter, Mr. Hoss was proceeded to file this action.  (Hosseinzadeh Decl. ¶ 28.)

The Defendants responded to Mr. Hoss's actions in the same willful and malicious manner that motivated their initial infringement by posting a new video to their YouTube

channel, "We're Being Sued,"[1] in which the Defendants proceeded to lambaste Mr. Hoss, Mr. Hoss's copyright claims, and even Mr. Hoss's attorneys to their two million Internet fans.  (Hosseinzadeh Decl. ¶ 29.)  Despite the jury demand in this matter, "We're Being Sued" broadcast details of inadmissible settlement negotiations which, given the technical nature of the Defendants' recorded legal arguments, seemed to by purposefully coached by the Defendants' counsel in violation of N.Y. Rule of Professional Conduct 3.6 (Trial Publicity).   Indeed, Defendant's counsel has done the same in its own declaration to this motion.  (Lee Decl. ¶ 7.)

The Defendants' public actions have resulted in significant damage to Mr. Hoss's reputation, including an onslaught of threatening correspondence to Mr. Hoss from the Defendants' fans.  (Hosseinzadeh Decl. ¶ 30.)  A representative sample of some of the hateful statements directed to Mr. Hoss are provided at Exhibit C to the Declaration of Matt Hosseinzadeh.  ((Hosseinzadeh Decl. ¶ 31., Ex. C.)

Now the Defendants have moved to dismiss the entirety of Mr. Hoss's Amended Complaint on the basis of their mistaken understanding of the term "publication" as used in the Copyright Act.

## ARGUMENT

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant

---

[1] Ethan Klein and Hila Klein, "We're Being Sued," h3h3Productions, May 24, 2016, https://www.youtube.com/watch?v=fEGVOysbC8w

fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed

factual allegations." *Id*. at 555.   "Factual allegations must be enough to raise a right to

relief above the speculative level . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Id*. (internal citation omitted).   A well-

pleaded complaint may proceed even if it appears "that a recovery is very remote and

unlikely." *Id*. (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). *See also Wynder v.*

*McMahon*, 360 F.3d 73, 78 n. 8 (2d Cir. 2004) ("The well-settled rule is that a court

should not grant a Rule 12(b)(6) motion to dismiss unless it appears certain that the

plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.").

A claim for copyright infringement has two elements: a valid copyright and

unlawful copying.  *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S.

340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991) ("To establish infringement, two

elements must be proven: (1) ownership of a valid copyright, and (2) copying of

constituent elements of the work that are original.").   In addition, for United States works,

a plaintiff must establish that the copyright is registered.  *Reed Elsevier, Inc. v. Muchnick*,

130 S.Ct. 1237, 176 L.Ed.2d 18 (2010).

### A.    <u>Plaintiff Properly Alleged A Valid Copyright In His Work</u>

Mr. Hoss properly alleged that he owns a valid United States Certificate of

Copyright Registration in his Work.  Specifically, the Amended Complaint alleged that: (i) Mr. Hoss has been issued the Registration Certificate for the Collection; and (ii) that the Work is one of several works forming the registered Collection under the Registration Certificate.

The Registration Certificate satisfies the requirement of 17 U.S.C. § 411 and creates a *prima facie* case that the copyright is valid and that the copyright claimant identified in the certificate owns the copyright.  17 U.S.C. § 410(c) provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

*See also, Fona Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) ("A certificate of copyright registration is prima facie evidence that the copyright is valid.").   Defendants do not dispute that Mr. Hoss owns the Registration Certificate appended at Exhibit A to the Amended Complaint.

### 1. The Defendants' attack on the Registration Certificate stems from their misunderstanding of the term "publication" as used in the Copyright Act.

The Defendants have correctly pointed out that the Registration Certificate is based on an "unpublished collection."  The Defendants have also correctly noted that Mr. Hoss applied for the Registration certificate on June 18, 2015, and that all of the works, including the Work, forming the Collection had all been at some point displayed on YouTube prior to that date.  The Defendants have also correctly cited to controlling law,

which for the sake of economy will not be reprinted here, holding that the inclusion of previously published works in an unpublished collection would serve to invalidate the certificate of registration for such collection.

The Defendants have misunderstood the meaning of the term "publication" as defined in the Copyright Act.  Specifically, the Copyright Act at 17 U.S.C. § 101 defines "publication" as:

> [T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

Courts applying this definition of "publication" to works displayed on the Internet have consistently held that such public performance or display of a work, without an attendant offer from the owner to sell or otherwise commercially license the work for subsequent distribution, does not constitute "publication" within the meaning of the Copyright Act. *See Einhorn v. Mergatroyd Prods.*, 426 F. Supp.2d 189, 197 (S.D.N.Y. 2006) (the Internet posting of a digital file of a show performance lacked the element of commercial exploitation required for publication); *McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481(JSR), 2010 U.S. Dist. LEXIS 120185, at *1 (S.D.N.Y. Nov. 9, 2010) (posting images on a website is not publication within the meaning of the Copyright Act).

Of course the above-cited cases preceded the Copyright Office's formal opinion on this issue as it relates to work that is, like Mr. Hoss's Work, uploaded to the Internet for streaming to the public.  On December 22, 2014, the Copyright Office issued its

Compendium III: Compendium of Office Practices which at § 1008.3(F) (Determining the Publication Status of a Work Made Available Only Online) which unequivocally states:

> *Streamed-only content*: Streaming is a performance, which, in and of itself, does not constitute a distribution of copies, because, as a practical matter, the user does not receive a copy. If a work is made available on a website only by streaming and not for download, it is not published.

Section 1008.3(F) further states:

> *Downloading or reproduction expressly prohibited*: If a work is posted and displayed on a website and if there is a notice on the webpage, in the terms of service for the site, or in another obvious place stating that the work and/or all content on the site may not be downloaded, printed, or copied (or other statement to that effect), that work(s) may be deemed unpublished, because any copies that may be downloaded, printed, or otherwise distributed to the user have not been authorized by the copyright owner.

In this case, the works comprising the Collection had never been made available for download in any medium.  Specifically, the works comprising the Collection had only ever been displayed on Mr. Hoss's YouTube channel which allows users to stream but not to download the videos.

In fact, the YouTube page which streams the Work clearly displays that such streaming is subject to the "Standard YouTube License."[2]

| Category | Comedy |
| License | Standard YouTube License |

The Standard YouTube License expressly prohibits users from downloading, copying, reproducing, distributing, transmitting, broadcasting, displaying, selling, licensing or

---

[2] Matt Hoss, "Bold Guy vs Parkour Girl," YouTube, Aug. 11, 2013, https://www.youtube.com/watch?v=Dj4XAYhF0ok

otherwise exploiting the content.  *See* Section 5, "Terms of Service," YouTube, Jun. 9, 2010, https://www.youtube.com/static?template=terms.

As described in the Factual Background, *supra*, Mr. Hoss made the Copyright Office explicitly aware that he had previously streamed the works comprising the Collection.  In fact Mr. Hoss initially attempted to register the Collection as a collection of published works.  As part of his application, Mr. Hoss disclosed to the Copyright Office that the works comprising the collection had all previous been streamed on YouTube.  The Copyright Office responded by citing to Compendium III: Compendium of Office Practices and concluding that the works comprising the collection had not been published within the meaning of the Copyright Act.  The Copyright Office then proceeded to register the Collection as a collection of unpublished works.

While views of the Copyright Office may not be dispositive, "its interpretations, like those of any other agency, may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency."  *McLaren v. Chico's FAS, Inc*., 2010 U.S. Dist. LEXIS 120185, at *9 (quoting *Morris v. Business Concepts*, Inc., 283 F.3d 502, 505-06 (2d Cir. 2002)) (internal quotations omitted).  Here, the Copyright Office's interpretation of "publication" in light of its own practices is particularly compelling given that the regulation here in issue was promulgated to codify the pre-existing Copyright Office practice of allowing copyright owners to register multiple unpublished works for a single fee.  *See Kay Berry, Inc. v. Taylor Gifts*, Inc., 421 F.3d 199, 206 n.2 (3d Cir. 2005).

The most recent cases opining on this specific issue in this Circuit, cited *supra*,

have held that posting audio-visual works to the Internet, without granting express permission for users to purchase, copy, or download the work, did not constitute "publication" within the meaning of the Copyright Act.  The sole case in this Circuit holding a contrary decision, *Getaped.com, Inc. v. Cangemi*, 188 F.Supp.2d 398, 401 (S.D.N.Y. 2002), based its holding on the "common theme" of other decisions in which authors had permitted an "Internet user to **download** a file containing a copyrighted work and thereby gain control of it, that is, gain a proprietary or possessory interest in the copyrighted work."  (**Emphasis added**.)  *Getaped.com* cited Nimmer on Copyright that "a sine qua non of pulication [is] that acquisition y members of the public of a possessory interest in tangible copies of the work in question."  M. Nimmer and D. Nimmer, Nimmer on Copyright § 4.07 (2001).  *Getaped.com* dealt with the publication of a website and held that such website was "published" when "an Internet user acquire[d] the ability to make a copy of that webpage, a copy that is, in fact, indistinguishable in every part to the original." *Getaped.com, Inc.*, 188 F.Supp.2d at 402.  Here, unlike in *Getaped*, Mr. Hoss streamed his Work in a manner that expressly prohibited users from making copies or otherwise downloading the Work.  Mr. Hoss's restrictions on downloading and copying of his Work were precisely in-line with the Copyright Office's guidance that online streaming does not constitute "publication" under the Copyright Act.

Additionally, if despite the foregoing guidance of caselaw and the Copyright Office the Court, nevertheless, deems there to be inaccuracies in the Registration Certificate, then 17 U.S.C. § 411(a), the statute on which the Defendants bring this motion to dismiss the Amended Complaint, requires the Court to "request the Register of

Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1)(B)(2). Where, as here, the Copyright Office has expressly opined on the accuracy of the information provided to it and in fact *actively guided* Mr. Hoss to register his Collection as an unpublished collection of works, it is clear that the Register of Copyrights would advise this Court that the Registration Certificate would have and, indeed, has been validly registered.

Accordingly, Mr. Hoss holds a valid Registration Certificate covering the Collection and the Work.

### 2. The Registration Certificate was registered with the express advice of the Copyright Office and therefore satisfies the requirements of Section 411.

The Defendants' motion to dismiss the Amended Complaint relies on 17 U.S.C. § 411(a) which requires the preregistration or registration of the relevant copyright claim prior to bringing an action for infringement under the Copyright Act.  The same statute at § 411(b) provides that "[a] certificate of registration satisfies the requirements of this section … regardless of whether the certificate contains any inaccurate information, unless … (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b).  The statute further provides that "[i]n any case in which inaccurate information described under paragraph (1) is alleged, the court shall

14

request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.*

As discussed above, the Copyright Office issued the Registration Certificate to Mr. Hoss after providing Mr. Hoss with explicit guidance that his works, having previously been displayed on YouTube, were nevertheless considered by the Copyright Office to be unpublished works within the meaning of the Copyright Act. Should this Court solicit advice on this issue from the Register of Copyrights, it is highly unlikely that the Register of Copyrights would contradict its own written statements to Mr. Hoss or otherwise contradict its express interpretation of "publication" within the context of Internet streaming as set forth in Compendium III: Compendium of Office Practices § 1008.3(F).

Moreover, where a Court would find a copyright registration invalid to satisfy § 411(a), the registrant would typically cure such invalidity by filing a supplemental registration pursuant to 17 U.S.C. § 408. In this case, however, in order to file such supplemental registration prior to the Court's opinion on this motion, Mr. Hoss would have to take the absurd position that he has, in his own wisdom, decided that the Copyright Office is wrong in its interpretation of the meaning of "publication" with respect to Internet streaming of works despite the Copyright Office's volume of written guidance on this specific issue.

Accordingly, should the Court decide that, contrary to the written guidance of the Copyright Office as well as the prior opinions of this District, that Internet streaming of

content constitutes publication within the meaning of the Copyright Act, then this question should be submitted to the Register of Copyrights for further clarification pursuant to § 411(b).  Respectfully, the straightforward solution to this issue would be to follow the guidance of Compendium III: Compendium of Office Practices § 1008.3(F).

### 3. Mr. Hoss's submissions to the Copyright Office were made in accordance with 37 C.F.R. § 202.3(b)(4)(i)(B)(1).

A group of unpublished works may be registered as a single work, upon payment of a single registration fee, if it consists of "all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished 'collection.'" 37 C.F.R. § 202.3(b)(4)(i)(B). A combination of such elements is considered a "unpublished collection" if:

> (1) The elements are assembled in an orderly form; (2) The combined elements bear a single title identifying the collection as a whole; (3) The copyright claimant in all of the elements, and in the collection as a whole, is the same; and (4) All of the elements are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element.

37 C.F.R. § 202.3(b)(4)(i)(B).

The Defendants argue that Mr. Hoss's submission to the copyright office, in connection with his Registration Certificate, were not "assembled in an orderly form under 37 C.F.R. § 202.3(b)(4)(i)(B)(1)."  (Def Mem. Mot. Dismiss 8.)  An applicant's submissions and correspondence with the Copyright Office are not immediately available

to the public,[3] thus Defendants cannot knowledgeably speak to the orderliness of Mr. Hoss's submissions.

In any case, as discussed in the Factual Background, Mr. Hoss deposited Quicktime versions of his completed works to the Copyright Office.   Evidently Mr. Hoss's submissions were assembled in a sufficiently orderly form as to warrant registration.   The Defendants devote a large portion of their argument to the fact that Mr. Hoss's videos do not bear the same titles as their titles in the Registration Certificate. This is clearly because Mr. Hoss has never "published" his videos within the meaning of the Copyright Act, and is free to title them however he wants in his "unpublished" public displays.   What is important, however, is that Mr. Hoss provided his deposits to the Copyright Office (i) in an orderly form; (ii) where the combined works bore a single collection title; (iii) Mr. Hoss was identified as the copyright claimant on all of the included works and in the collection as a whole; and (iv) Mr. Hoss was the sole author of all of the claimed works in the collection.

As implicitly indicated by the Copyright Office in the form of the Registration Certificate, Mr. Hoss's submission complied with 37 C.F.R. § 202.3(b)(4)(i)(B).

### B.   Plaintiff's Second Claim For Relief (DMCA Misrepresentation) Pleads A Valid Cause Of Action

The Defendants' motion to dismiss the Amended Complaint fails to address Mr.

---

[3] Circular 6: Obtaining Access to and Copies of Copyright Office Records and Deposits, U.S. Copyright Office, Apr. 4, 2016, http://www.copyright.gov/circs/circ06.pdf

Hoss's second claim for relief alleging misrepresentation by the Plaintiffs in violation of 17 U.S.C. § 512 (the "**DMCA**").

The DMCA at § 512(f) provides that "[a]ny person who knowingly materially misrepresents under this section … shall be liable for any damages, including costs and attorneys' fees, incurred … by any copyright owner or copyright owner's authorized licensee … who is injured by such misrepresentation."   DMCA § 512(f) authorizes a private, federal right of action and does not predicate such authorization on the registration of a copyright—there is no authority holding otherwise, and the Defendants have not argued otherwise.

In this case, Mr. Hoss made a valid notification against the Defendants pursuant to the DMCA in order to remove the Infringing Video from YouTube.   The Defendants responded by submitting a counter-notification to YouTube in which the Defendants misrepresented that the Infringing Video was noncommercial and a fair use.   DMCA § 512(g) provides that, upon receiving the Defendants' counter-notification, YouTube should have restored the Infringing Video unless Mr. Hoss filed an action seeking a court order to restrain the Defendants from engaging in infringing activity relating to the Infringing Video.   17 U.S.C. § 512(g)(1)(2)(B − C).   Thus Mr. Hoss was forced to commence this action in order to prevent the restoration of the Infringing Work to YouTube based on the Defendants' misrepresentations.

Accordingly, Plaintiff's second claim for relief pleads a valid cause of action.

18

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully request that the Court denies the Defendants motion to dismiss the Amended Complaint.

Dated: New York, New York
       July 11, 2016

                                    THOMPSON BUKHER LLP


                                    By: _____

                                        Tim Bukher (TB1984)
                                    75 Broad Street, Suite 2120
                                    New York, New York 10004
                                    Telephone: (212) 920-6050
                                    Facsimile: (646) 349-2366

                                    *Attorneys for the Defendants*