Caroline A. Morgan
Fox Rothschild LLP
100 Park Avenue, 15th Fl.
New York, NY 10017
Telephone: 212-878-7900

Jeffrey S. Kravitz (admitted *pro hac vice*)
Rom Bar-Nissim (admitted *pro hac vice*)
Fox Rothschild LLP
1800 Century Park East, Suite 300
Los Angeles, California 90067-1506
Telephone: 310-598-4150
Attorneys for Defendants

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATT HOSSEINZADEH,<br><br>                    *Plaintiff,*<br><br>   – vs –<br><br>ETHAN KLEIN and HILA KLEIN,<br><br>                   *Defendants.* | **Civ. 16-cv-3081 (KBF)**<br><br>**DEFENDANTS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ........................................................................................................ 2

     **A.**    Plaintiff's Requests For Judicial Notice Are Improper......................................... 2

          1.    The Facts Plaintiff Requests Judicial Notice Of From Defendants' YouTube Pages Are Not The Proper Subjects Of Judicial Notice............ 2

          2.    Plaintiff's Request For Judicial Notice Of Wikipedia Is Improper............ 5

          3.    Plaintiff's Request For Judicial Notice The Article Is Improper ............... 6

     **B.**    Plaintiff Fails To Demonstrate The Critique Video Is Not Transformative........... 7

          1.    Plaintiff Fails To Demonstrate That The Critique Video Does Not Qualify As "Criticism" Or "Comment"..................................................... 7

               a.    Plaintiff Concedes The Critque Video Is Transformative.................10

               b.    Killing The Frog: Why Defendants' Critique Video Can Reasonably Be Perceived As Criticizing The Work ........................ 12

          2.    Plaintiff's Transcript Of Defendants' Critique Video Is Improper...........15

          3.    Plaintiffs' Argument That *Elvis* Controls Fails.......................................16

          4.    Plaintiff Mischaracterizes the *Equals Three* Decision .............................17

          5.    Plaintiff's Remaining Arguments Are Frivolous .....................................19

     **C.**    Plaintiff Fails To Demonstrate The Second Factor Weighs In His Favor ...........20

     **D.**    Plaintiff Fails To Demonstrate The Third Factor Weighs In His Favor ..............20

     **E.**    Plaintiff Fails To Demonstrate The Fourth Factor Weighs In His Favor .............21

     **F.**    Plaintiff Concedes He Has No Claim For Misrepresentation .............................22

     **G.**    Plaintiff Has No Claim For Defamation .........................................................23

III.   CONCLUSION ...................................................................................................25

ACTIVE\44001191.v2-1/12/17

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Abilene Music, Inc. v. Sony Music Entm't, Inc.*,
    320 F. Supp. 2d 84 (S.D.N.Y. 2003) ......................................................................... 8, 9, 10

*Adjmi v. DLT Entm't, Ltd.*
    97 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) ................................................................. *passim*

*Armstrong v. Simon & Schuster*,
    85 N.Y.2d 373 (1995) ................................................................................................. 25

*Arrow Prods. Ltd., v. The Weinstein Co.*,
    44 F. Supp. 3d 359 (S.D.N.Y. 2014) .......................................................................... 5

*Author's Guild, Inc. v. Google, Inc.*,
    802 F.3d 202 (2d Cir. 2015) ....................................................................................... 20

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006) ....................................................................................... 9

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012) ....................................................................... 23, 24, 25

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006) ....................................................................... 5, 8, 9, 19, 20

*Bleistein v. Donaldson Lithographing Co.*,
    188 U.S. 239 (1903) .................................................................................................... 4, 7

*Bourne Co. v. Twentieth Century Fox Film Corp.*,
    602 F. Supp. 2d 499 (S.D.N.Y. 2009) ....................................................................... 8, 9, 10

*Brownmark Films, LLC v. Comedy Partners*,
    582 F.3d 687 (7th Cir. 2012) ...................................................................................... 22

*Burnett v. Twentieth Century Fox Film Corp.*,
    491 F. Supp. 2d 962 (C.D. Cal. 2007) ....................................................................... 11

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
    87 F. Supp. 3d 499 (S.D.N.Y. 2015) .......................................................................... 8, 9

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) .................................................................................................... *passim*

ACTIVE\44001191.v2-1/12/17

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013) ...................................................................7, 20

*Cerasani v. Sony Corp.*,
   991 F. Supp. 343 (S.D.N.Y. 1998)...................................................................6

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
   423 F. Supp. 2d 173 (S.D.N.Y. 2006) ..............................................................2

*Effie Film, LLC v. Murphy*,
   932 F. Supp. 2d 538 (S.D.N.Y. 2013) ..............................................................5

*Elvis Presley Enter., Inc. v. Passport Video*,
   349 F.3d 622 (9th Cir. 2003) ..................................................................4, 16, 17

*Equals Three, LLC v. Jukin Media, Inc.*,
   139 F. Supp. 3d 1094 (C.D. Cal. 2015)................................................6, 17, 18

*Fox News Network, LLC v. TVEyes, Inc.*,
   43 F. Supp. 3d 379 (S.D.N.Y. 2014) ...............................................................16

*Hofheinz v. Discovery Commc'ns, Inc.*,
   No. 00 CIV. 3802 (HB), 2001 WL 1111970 (S.D.N.Y. Sept. 20, 2001) .......................3, 4, 14

*Hustler Magazine v. Falwell*,
   485 U.S. 46 (1988) ......................................................................................11

*Ingber v. Lagarenne*,
   299 A.D. 2d 608 (2002)................................................................................23

*Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.*,
   146 F.3d 66 (2d Cir. 1998) .............................................................................6

*Kavanagh v. Zwilling*,
   578 Fed. App'x 24 (2d Cir. 2014)...................................................................25

*Leibovitz v. Paramount Pictures Corp.*,
   137 F.3d 109 (2d Cir. 1998) ...........................................................5, 8, 10, 20

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016), *cert. denied,* 137 S. Ct. 416 (2016) .....................................22

*Leonard v. Pepsico, Inc.*,
   88 F. Supp. 2d 116 (S.D.N.Y. 1999) ...............................................................12

*Love v Morrow & Co.*,
   193 A.D. 2d 586 (1993)................................................................................23

iii

*Lucasfilm, Ltd. v. Media Market Grp., Ltd*,
   182 F. Supp. 2d 897 (C.D. Cal. 2000) .................................................................11

*Mattel, Inc. v. Pitt*,
   229 F. Supp. 2d 315 (S.D.N.Y. 2002) ...............................................................11

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 729 (9th Cir. 2003) ................................................... 8, 10, 11, 15

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   No. 03 CV 4080(MP), 2004 WL 305809 (S.D.N.Y. Feb. 18, 2004) ......................................6

*N. Jersey Media Grp. Inc. v. Pirro*,
   74 F. Supp. 3d 605 (S.D.N.Y. 2015) ...............................................................10

*Nunez v. Caribbean Int'l News Corp.*,
   235 F.3d 18 (1st Cir. 2000) ...............................................................8, 9

*Stepanov v. Dow Jones & Co.*,
   120 A.D.3d 28 (2014) ................................................................24, 25

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014) .........................................9, 10, 16, 19, 21

*TCA Television Corp. v. McCollum*,
   839 F.3d 168 (2d Cir. 2016) ................................................... 9, 17, 20

*Wade Williams Distribution, Inc. v. Am. Broad. Co.*,
   No. 00 CIV. 5002 (LMM), 2005 WL 774275 (S.D.N.Y. Apr. 5, 2005) ...........................4, 17

*Warner Bros. Entm't, Inc. v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008) ...............................................................19

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015) ................................................................2

*Yankee Publishing Inc. v. News America Publishing, Inc.*,
   809 F. Supp. 267 (S.D.N.Y. 1992) ................................................................7

**Statutes**

17 U.S.C. § 101 ................................................................19

17 U.S.C. § 512(f) ...............................................................1, 22

17 U.S.C. § 512(g) ................................................................22

**Other Authorities**

Fed. R. Civ. P. 12(d) ........................................................................................................5

Fed. R. Evid. 201 .........................................................................................................2, 6

WILLIAM F. PATRY, PATRY ON COPYRIGHT, § 10:20 (Sept. 2016) ....................................................3

Lee F. Peoples, *The Citation of Wikipedia in Judicial Opinions*,
12 YALE J. L. & TECH. 1 (2009) ..............................................................................................6

ACTIVE\44001191.v2-1/12/17

# I. INTRODUCTION

Plaintiff Matt Hosseinzadeh's ("Plaintiff") Consolidated Cross-Motion and Opposition ("Brief") is defective procedurally, substantively and analytically. Procedurally, he requests judicial notice for facts that are not the proper subject of judicial notice, including judicial notice that Defendants Ethan and Hila Klein (collectively, "Defendants") are entertainers and their content is made solely for entertainment purposes. William F. Patry has described this argument as "spurious" and it has been rejected twice within this Circuit as improper.

Plaintiff is adamant that Defendants' video, *The Big, The BOLD, The Beautiful* ("Critique Video") could not possibly constitute comment or criticism for fair use purposes. Yet, he cites no law or standard to prove he is correct. Instead, he repeatedly asks this Court to engage in improper subjective judgments of Defendants and their works, including the Critique Video.

The legal standard to determine if the Critique Video constitutes transformative criticism is if it could "reasonably be perceived" as critiquing the original. The Supreme Court arrived at this standard to avoid the exact kind of subjective judgments Plaintiff requests. Defendants' biting criticism of the original is obvious and the amount Defendants' used of *Bold Guy vs. Parkour Girl* ("Work") is "reasonable" in light of that purpose, which is all the law requires.

Plaintiff's claims for misrepresentation and defamation are equally defective. Again, Plaintiff fails to plead Defendants engaged in any representation prohibited by 17 U.SC. § 512(f). His response to the defamation claim even concedes that *We're Being Sued* ("Lawsuit Video") contains no false statements other than the one he has alleged, yet he is adamant his life would be different if Defendants mentioned he had contacted them first.

1

The time for this to end is now. Plaintiff may be bold, but this lawsuit was ill-advised from its inception. Defendants respectfully request that this Court grant their Motion for Judgment on the Pleadings ("Motion") and deny Plaintiff's Cross-Motion.

## II.    ARGUMENT

### A.    Plaintiff's Requests For Judicial Notice Are Improper

Plaintiff's Brief relies, in large part, on improper requests for judicial notice. He omits any discussion regarding what facts are subject to judicial notice because he has no case to make.

Fed. R. Evid. 201 governs and states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

For purposes of a 12(c) motion, "a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.,* 423 F. Supp. 2d 173, 179 n. 8 (S.D.N.Y. 2006)).

### 1.    The Facts Plaintiff Requests Judicial Notice Of From Defendants' YouTube Pages Are Not The Proper Subjects Of Judicial Notice

Defendants' YouTube channels homepages are technically not hosted on their website, but Defendants recognize that their *existence* is a proper subject of judicial notice because they serve as a homepage. Defendants also agree that the *existence* of the content on Defendants' YouTube pages may serve as information publicly announced on a party's website and, since Defendants physically appear in their videos, there is no dispute as to their authenticity.

2

However, Plaintiff improperly requests this Court to take judicial notice of the following "facts" from Defendants' YouTube pages and content: (1) "Defendants are ***exclusively*** entertainers"; (b) they have "***never*** published a serious work of literary criticism"; (c) "[e]very single one of Defendants' videos, including the [Critique] Video, is published ***purely to entertain*** Defendants' subscribers…" (Brief at 7) (emphasis in the original); and (d) "Defendants' subscribers do not patronize the Defendants' for their keen analysis and commentary of creative works – much less the Plaintiff's creative [W]ork – but do so purely for comedic entertainment." Brief at 8. These propositions are not subject to judicial notice because they are subject to reasonable dispute and wholly irrelevant to the determination of the issues presented.

Plaintiff's requests are made to support his argument that Defendants' content is not fair use because it is exclusively intended for entertainment purposes. As noted copyright scholar William F. Patry stated, Plaintiff's request and argument is "spurious" because "all parodies, and much comment and criticism are made in an entertainment context." WILLIAM F. PATRY, PATRY ON COPYRIGHT, § 10:20 (Sept. 2016 Update).

The broad categorization of works as "entertainment" for the fair use analysis has already been rejected twice in this Circuit. In *Hofheinz v. Discovery Commc'ns, Inc.*, No. 00 CIV. 3802 (HB), 2001 WL 1111970, at *4 (S.D.N.Y. Sept. 20, 2001), the plaintiff argued the alleged infringing work was "mere entertainment" and "not the kind of works contemplated by the § 107 categories." The court stated this argument was "flawed in two respects." *Id.*

> First, § 107 categorizes allegedly infringing works on the basis of their relationship to the subject matter depicted-i.e., whether the allegedly infringing work aims to comment, critique, report on, or research a particular subject. ***Section 107 does not explicitly distinguish between entertaining and serious, plausible and implausible, or weighty or frivolous commentaries, and I do not propose to engage in such subjective line-drawing.***

*Id.* (emphasis added). The takeaway is clear: (1) fair use focuses on the works at issue, not other works; and (2) courts should not make subjective judgments on whether a fair use is entertaining, accurate or substantive, nor characterize the speaker as an entertainer.

This "entertainment" argument was resurrected and summarily rejected a second time in *Wade Williams Distribution, Inc. v. Am. Broad. Co.* ("*Wade*"), No. 00 CIV. 5002 (LMM), 2005 WL 774275, at *9 (S.D.N.Y. Apr. 5, 2005). As the Plaintiff in this case, the plaintiff in *Wade* "ask[ed] this court to *alter the law of fair use* by drawing a distinction between 'commentary or criticism' and 'entertainment,' and cite[d] *Elvis Presley Enter., Inc. v. Passport Video,* 349 F.3d 622 (9th Cir. 2003) in support of its proposition." *Wade*, 2005 WL 774275, at *9 (emphasis added). Citing *Hofheinz*, the court in *Wade* wisely refused to accept the plaintiff's invitation and explained: "The problem with such a rule lies in the difficulty of discerning what constitutes 'entertainment' and what does not." *Id.* "Courts have consistently and prudently avoided subjective judgments in copyright cases, and this Court will not engage in one here." *Id.* (citing *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 251 (1903) (Holmes, J.)). As such, Plaintiff's requests for judicial notice are improper as they seek a subjective determination and promote a theory that has already been found meritless.

Aside from being in direct conflict with well-established fair use principles, Plaintiff's requests are pernicious for two reasons: (1) they focus on works other than the one's at issue in this dispute; and (2) they seek to use the speaker's background and identity to determine the availability of the fair use defense.[1] As discussed in greater detail in Section II.B, *infra*, the

_____

[1] This proposition is particularly ill-taken because it would affect an entire spectrum of content creators, from well-established studios (who would be locked into the category of entertainment) and those who are just beginning their foray into content creation with no background in criticism or scholarship and summarily deny protection to artists and social critics as varied as Chris Rock and Dennis Miller.

relevant fair use inquiry requires examining whether the second work may "reasonably be perceived" as transformative. The court in *Adjmi v. DLT Entm't, Ltd.* also made this point abundantly clear: "Courts in this Circuit have resolved motions to dismiss on fair use grounds in this way: ***comparing the original work to an alleged parody***, in light of applicable law." 97 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) (emphasis added) (citing *Blanch v. Koons,* 467 F.3d 244, 249-50 (2d Cir. 2006); *Leibovitz v. Paramount Pictures Corp.,* 137 F.3d 109 (2d Cir. 1998); *Arrow Prods. Ltd., v. The Weinstein Co.,* 44 F. Supp. 3d 359, 366-73 (S.D.N.Y. 2014); *Effie Film, LLC v. Murphy,* 932 F. Supp. 2d 538, 545-53 (S.D.N.Y. 2013)).[2] Indeed, Plaintiff offers no citation to a case where a court examined the background of the speaker or their prior works to determine the question of fair use. Furthermore, the *Adjmi* court refused to "rely on reviews, user comments related to online reviews, images of the play, or certain of Mr. Adjmi's statements regarding the [alleged infringing work]," even though some of these reviews were attached to the complaint itself. *Adjmi,* 97 F. Supp. 3d at 527 n. 12 and 532 n. 13. As such, Plaintiff's request for judicial notice of such purported "facts" is procedurally and substantively improper. In addition, because Plaintiff's Brief places such great reliance on the improper use of extrinsic evidence, Plaintiff's Cross-Motion should be converted into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) and summarily defeated.

> ### 2.    <u>Plaintiff's Request For Judicial Notice Of Wikipedia Is Improper</u>

Plaintiff improperly requests this Court to take judicial notice of a Wikipedia entry regarding h3h3 Productions ("Entry") for the fact that Defendants are "an Israeli-American

---

[2] The fact that *Adjmi* addressed this issue in the context of parody is irrelevant. The Second Circuit explicitly stated that: "We have applied *Campbell* in too many non-parody cases to require citation for the proposition that the broad principles of *Campbell* are not limited to cases involving parody." *Blanch,* 467 F.3d at 255.

comedy YouTube channel produced by husband-and-wife team … mostly consit[ing] of sketch comedy and reaction videos." Brief at 8.

First, Plaintiff cannot demonstrate that the Entry is Defendants' website, and therefore it does not fall within the category of judicially noticeable facts. Second, the content of Wikipedia entries are not the proper subject of judicial notice because they are not capable of accurate and ready determination. *See generally,* Lee F. Peoples, *The Citation of Wikipedia in Judicial Opinions*, 12 YALE J. L. & TECH. 1 (2009). This is evident from the Entry itself. As of this filing, the Entry still states that Defendants' attorney in this matter is Ryan Morrison, which is incorrect. Third, Defendants find Plaintiff's reliance on the Entry perplexing because, as of this filing, it describes Defendants' activities as critics, commentators, documentarians and parodists, notably disagreeing with Plaintiff's premise. Regardless, Defendants' background is irrelevant to the fair use inquiry and should be disregarded – despite being beneficial to Defendants.

### 3. **Plaintiff's Request For Judicial Notice The Article Is Improper**

Plaintiff improperly seeks judicial notice of a newspaper article regarding the outcome of *Equals Three, LLC v. Jukin Media, Inc.,* 139 F. Supp. 3d 1094 (C.D. Cal. 2015).

> While news articles may be judicially noticed for the fact of their publication, they may not be judicially noticed for the truth of the matter asserted – that is, as "adjudicative facts." *See* Fed. R. Evid. 201. That the newspaper articles refer to testimony which can also be gleaned from trial transcripts does not qualify the asserted testimony as an appropriate matter for judicial notice. *See Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.,* 146 F.3d 66, 70–71 (2d Cir. 1998); *see also Cerasani v. Sony Corp.,* 991 F. Supp. 343, 354 n. 2 (S.D.N.Y. 1998) (Chin, J.).

*In re Merrill Lynch Tyco Research Sec. Litig.,* No. 03 CV 4080(MP), 2004 WL 305809, at *4 n. 3 (S.D.N.Y. Feb. 18, 2004). As such, Plaintiff's requests are again improper.

/ / /

/ / /

ACTIVE\44001191.v2-1/12/17

**B.** **Plaintiff Fails To Demonstrate The Critique Video Is Not Transformative**

    **1.** **Plaintiff Fails To Demonstrate That The Critique Video Does Not Qualify As "Criticism" Or "Comment"**

Plaintiff does not dispute that comment and criticism carry a strong presumption of being transformative. *See* Motion at 11. Nor does he dispute that comment and criticism provide the greatest justification for borrowing. *Id.* Instead, Plaintiff's position is that the Critique Video does not qualify as "criticism" or "comment"; he cites no law for this proposition. Instead, he repeatedly asks this Court to make a subjective value judgment of the Critique Video, using phrases like "legitimate criticism" (Brief at 5), "serious work of literary or film criticism" (*Id.* at 6), "useful criticism" (*Id.*), "valid criticism" (*Id.* at 7, 12), "substantive criticism" (*Id.* at 9, 14), "substantive commentary" (*Id.* at 17), and "legitimate commentary and criticism" (*Id.* at 19, 21).

This is not the law or the standard. The Supreme Court stated that the standard is whether Defendants' use of Plaintiff's Work "***reasonably could be perceived as commenting on the original or criticizing it, to some degree***." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583 (1994) (emphasis added). To make this determination a court must "examine how the [works] may '***reasonably be perceived' in order to assess their transformative nature***." *Cariou v. Prince,* 714 F.3d 694, 707 (2d Cir. 2013) (emphasis added).

The Supreme Court formulated the "reasonably be perceived" standard to prevent courts from engaging in the exact kind of subjective value judgments that Plaintiff asks of this Court.

> As Justice Holmes explained, "it would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of a work, outside of the narrowest and most obvious limits. At the one extreme some works of genius would be sure to miss appreciation. Their very novelty would make them repulsive until the public had learned the new language in which their author spoke." *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 251 (1903) (circus posters have copyright protection); cf. *Yankee Publishing Inc. v. News America Publishing, Inc.,* 809 F. Supp. 267, 280 (S.D.N.Y. 1992) (Leval, J.) ("First Amendment protections do not apply only to those who speak clearly, whose jokes are funny, and whose parodies succeed") (trademark case).

*Campbell*, 510 U.S. at 582–83 (internal brackets omitted). Indeed, both the Second and Ninth Circuits have repeatedly refused to address the "validity," "legitimacy," or the "substantive" nature of the secondary work. *See Blanch,* 467 F.3d at 255 ("It is not, of course, our job to judge the merits of [defendant's work] or of [defendant's] approach to art."); *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 729, 802 (9th Cir. 2003) ("However one may feel about [defendant's] message – whether he is wrong or right, whether his methods are powerful or banal – his photographs [are] parody …."); *Leibovitz,* 137 F.3d at 113 ("The Court cautioned that the quality of the parody is not to be evaluated"); *BWP Media USA, Inc. v. Gossip Cop Media, LLC,* 87 F. Supp. 3d 499, 507 (S.D.N.Y. 2015) (the fact an article was a "far cry from Woodward and Bernstein … does not make it any less of a fair use") (quoting *Nunez v. Caribbean Int'l News Corp.,* 235 F.3d 18, 22-23 (1st Cir. 2000)); *Bourne Co. v. Twentieth Century Fox Film Corp.,* 602 F. Supp. 2d 499, 507 (S.D.N.Y. 2009) (use was transformative even if it was an "inside joke" that "failed").

Nor is Plaintiff correct that comedy and humor do not constitute criticism and comment under Section 107. The Supreme Court stated parody is merely one of the "[l]ess ostensibly **humorous forms of criticism** [and] like other comment or criticism, may claim fair use under § 107." *Campbell,* 510 U.S. at 579-80 (emphasis added). To "ridicule" for "comic effect" the original is one of the "types of comment and criticism that traditionally have a had a claim to fair use protection as transformative works." *Id.* at 580-583; *see also Leibovitz,* 137 F.3d at 114 (comedic ridicule of original was transformative); *Abilene Music, Inc. v. Sony Music Entm't, Inc.,* 320 F. Supp. 2d 84, 89 (S.D.N.Y. 2003) ("[T]o comment on or criticize the 'substance or style of the original composition' through humor or slapstick, makes it a form of criticism."). "[H]umorous forms of criticism … **provide social benefit**, by shedding light on an earlier work,

and, in the process, creating a new one." *Campbell,* 510 U.S. at 579 (emphasis added)

The parody/satire distinction may help. *See Blanch*, 467 F.3d at 255 ("We have applied *Campbell* in too many non-parody cases to require citation for the proposition that the broad principles of *Campbell* are not limited to cases involving parody. But the satire/parody distinction may nevertheless be relevant to the application of these principles.")

"The distinction between parody and satire turns on the object of the 'comment' made by the allegedly infringing work." *Bourne,* 602 F. Supp. 2d at 504-05. A parody "***at least in part, comments on that author's works.***" *Campbell,* 510 U.S. at 580 (emphasis added). A satire has "***no critical bearing on the substance or style of the original***" and, therefore, the other factors become more relevant. *Campbell*, 510 U.S. at 580-81(emphasis added).

In the context of two humorous works, the Second Circuit stated the use is not transformative when the "***only purpose*** served by the extent of defendants' taking is ***identically comedic*** to that of the original authors [and copies] extensively for its ***original comedic effect…***" *TCA Television Corp. v. McCollum,* 839 F.3d 168, 182-83 (2d Cir. 2016); *see also Abilene,* 320 F. Supp. 2d at 91 ("appropriate[ing] material from an existing work for humorous effect, without directing its criticism or ridicule at the copied work itself," is not transformative).

In the Second Circuit, transformative comment or criticism occurs when "the altered purpose or context of the work [is] evidenced by surrounding commentary or criticism." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.* ("*Swatch*")*,* 756 F.3d 73, 84 (2d Cir. 2014) (citing *Bill Graham Archives v. Dorling Kindersley Ltd.,* 448 F.3d 605, 609–610 (2d Cir. 2006); *Nunez,* 235 F.3d at 22–23). "Such 'surrounding commentary or criticism' clearly militates for a finding of transformative use."  *BWP,* 87 F. Supp. 3d 499, 507 (S.D.N.Y. 2015) (quoting *Swatch,* 756 F.3d at 84); *Cf. Id.* (use of photo surrounded by commentary and criticism of original was

transformative; use of photo without was not); *N. Jersey Media Grp. Inc. v. Pirro,* 74 F. Supp. 3d 605, 615-17 (S.D.N.Y. 2015) (including cropping and hashtag to photo was not transformative).

### a.      Plaintiff Concedes The Critique Video Is Transformative

Plaintiff effectively concedes that the Critique Video is transformative. He states "Defendants' jokes are far more pornographic, offensive, and disturbing than ***any interpretation*** of the Work" (Brief at 1) (emphasis added) and "Mr. Klein's comments about rape and object-insertion served to supplant the Work with sexual innuendo ***far above and beyond what was insinuated in the original.***" *Id.* at 14 (emphasis added).

A work is considered transformative when it changes the context, tone, associations or feel of the original. *See Mattel,* 353 F.3d at 802 (finding transformative use when a "different set of associations and a different context" givien to the original); *Leibovitz,* 137 F.3d at 114 (finding transformative use from facial expression that "contrasts so strikingly" with original it could "reasonably be perceived as commenting on the seriousness, even the pretentiousness, of the original."); *Adjmi,* 97 F. Supp. 3d at 531-32 (finding a screenplay transformative because of "markedly different tone" that served as a "vehicle to criticize and comment on the original's light-hearted, sometimes superficial, treatment of certain topics and phenomena."); *Bourne,* 602 F. Supp. 2d at 509 (finding use of song in television parody transformative because of "strikingly different in tone and message."); *Abilene,* 320 F. Supp. 2d at 90 (finding use of song transformative because it had "a tone that might reasonably be perceived as sarcastic.").

Making a work more crude, vulgar or pornographic is also transformative. *See Campbell,* 510 U.S. at 583 ("degrading taunts, a bawdy demand for sex, and a sigh of relief from paternal responsibility" made work transformative); *Mattel,* 353 F.3d at 802 (placing original in "sexually

suggestive contexts" was transformative); *Adjmi,* 97 F. Supp. 3d at 532 (finding transformative use when "unrelentingly vulgar" compared to the original); *Burnett v. Twentieth Century Fox Film Corp.,* 491 F. Supp. 2d 962, 968 (C.D. Cal. 2007) ("crude joke" constituted fair use because it placed the original in an "awkward, ridiculous, crude, and absurd situation"); *Mattel, Inc. v. Pitt* ("*Pitt*")*,* 229 F. Supp. 2d 315, 322-23 (S.D.N.Y. 2002) (using "sadomasochistic costume and/or storylines" was transformative); *Lucasfilm, Ltd. v. Media Market Grp., Ltd,* 182 F. Supp. 2d 897, 901 (C.D. Cal. 2000) (pornographic version of Star Wars was fair use).

Whether the comment or critique is in good or bad taste is not part of the inquiry. *See Campbell,* 510 U.S. at 582 (holding that whether the use is in "good taste or bad does not and should not matter to fair use."); *Mattel,* 353 F.3d at 801 (holding that whether the use "is in bad taste is not relevant to whether it constitutes fair use."); *Burnett,* 491 F. Supp. 2d 962, 968 (C.D. Cal. 2007) ("[W]hether [use] is in good taste or bad taste does not and should not matter to fair use.") (internal ellipsis omitted); *Pitt,* 229 F. Supp. 2d at 323 n. 2 ("Nor is the question of whether [defendant's works] are in good taste relevant."). Indeed, awful criticism "will not always be reasoned or moderate and may come in the form of vehement, caustic, and sometimes unpleasantly sharp attacks." *Burnett,* 491 F. Supp. 2d at 969 (internal quotes omitted) (quoting *Hustler Magazine v. Falwell,* 485 U.S. 46, 51 (1988)). Therefore, Plaintiff admits the Critique Video is transformative because it was "far more pornographic, offensive, and disturbing than any interpretation of the Work" (Brief at 1) and "served to supplant the Work with sexual innuendo far above and beyond what was insinuated in the original." *Id.* at 14.

### b.      Killing The Frog: Why Defendants' Critique Video Can Reasonably Be Perceived As Criticizing The Work

> Explaining why a joke is funny is a daunting task; as the essayist E.B. White has remarked, "Humor can be dissected, as a frog can, but the thing dies in the process."

*Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 128 (S.D.N.Y. 1999) (ellipsis omitted) (explaining why a Pepsi advertisement stating customers could cash in seven million Pepsi points for a Harrier fighter jet was funny and not a real offer for a contract).

Plaintiff seems oblivious to Defendants' critique, mockery and ridicule. Fortunately, the availability of the fair use defense does not turn on whether Plaintiff gets the joke or appreciates it. *See Adjmi,* 97 F. Supp. 3d at 530. ("[Plaintiff] may not like that transformation, but it is a transformation nonetheless."). With that said, Defendants will dissect the frog.

**Context:** The different context of the two works is striking. Plaintiff's Work is a testosterone-charged male fantasy featuring choice physical specimens. In contrast, Defendants are a nerdy married couple that like to make each other laugh. Ethan freely admits that Plaintiff is more likely to appear on the cover of GQ then he (but Hila does not). The contrast in male-female relations is stark, Defendants exhibit a real married relationship, while Plaintiff's Work portrays a fantasy from a single male's point of view.

**Plot:** Throughout the Critique Video, Defendants use Plaintiff's Work to critique, mock and ridicule the plot. As Hila aptly and sarcastically noted: "What I love about [Plaintiff's] videos is that he setup that situation. … [T]his is his script. … So, if you look at it from his point of view, this is just a girl doing this stuff on the street." This comment encapsulates the rationale behind Defendants' critique of Plaintiff's Work. Throughout, Defendants mock and ridicule Plaintiff's plot for being a cheesy reflection of his male-centric sexual fantasy. They repeatedly point out moments in the plot that resemble a pornographic film and how it appeals to a prurient interest.

12

**Characters**: Defendants continuously critique, mock and ridicule the characters in Plaintiff's Work. As for the female character ("Woman"), Defendants point out the absurdity of her actions, like jutting her hindquarters to accentuate her tush on a public street. They critique how the character starts out as being overly annoying and hyper-sexualized but, on the drop of a dime, becomes irresistibly attracted to Plaintiff's character (after all, who would not). Defendants are even more scathing regarding Plaintiff's character. They point out the numerous occasions the character comes off as smug and conceited. They mock his costume of a "sleeveless hoodie," and refer to it, which serves as a shorthand for Plaintiff's character's conceit.

**Dialogue**: Throughout the Critique Video, Defendants point out how the dialogue is stilted and resembles a pornographic film. They mock the way Plaintiff writes his dialogue to always set up his character as being clever and cool. They ridicule how he writes self-serving compliments about his body into the script. They point out how the Woman's dialogue is indicative of a male fantasy by comparing it to that of a pornographic film.

**Parkour Chase**: Defendants mock how Plaintiff repeatedly uses parkour in his videos and the ridiculousness of the Work's chase scene. They point out that, if the premise is for the Woman to escape Plaintiff's character or for Plaintiff's character to catch the Woman, they both go about this objective in the most inefficient manner. They point out how the characters will scale walls when stairs lie adjacent. They make fun of Plaintiff's character's lack of physical grace. They mockingly encourage Plaintiff's character to catch the Woman. They imagine the various sexually depraved and grotesque scenarios that would happen if Plaintiff's character catches her. They make fun of the chase's duration and tedium.

**Historical/Sociological Context**: Defendants place Plaintiff's work in historical and sociological context. They explain how the Work comes from an era they dub as "CringeTube" (i.e., when

cringe-worthy content was pervasive on YouTube) and a predecessor of Prank Invasion (a YouTube sexual prank channel). In light of its ridiculousness, Defendants express shock at the Work's popularity, pointing out it had nearly ten million views and the "likes" reflect it actually spoke to the majority of its viewers. They explain Plaintiff's comparatively low subscriber count because, like pornography, the viewer gets what he wants and moves on after being satisfied.

**Misogyny**: A pervasive commentary throughout the Critique Video is how the Work portrays gender roles and how this reflects Plaintiff's worldview. As its creator, Plaintiff is responsible for writing the script and directing the film. He wrote the Woman to be completely unsympathetic and a sex object. Plaintiff's dialogue makes each pro-female comment by the Woman a mere set-up for Plaintiff's character's clever and dismissive response. Plaintiff directed the Woman to suddenly go from being utterly repelled by to irresistibly attracted to Plaintiff's character (no doubt because he is so bold). They expose how the Work appeals to a juvenile and prurient interest. This stands in stark contrast to Defendants dynamic as a married couple. They expose the Work as, not something to be aroused by, but a grotesque worldview of gender dynamics.

**"Carrots" & "Mayonnaise":** Ethan repeatedly references carrots and mayonnaise in order to highlight the pornographic appeal of Plaintiff's Work. They become a shorthand for this point throughout the Critique Video. Carrots, aside from being nutritious, carry a sexual connotation of male genitalia, particularly when used in reference to being inserted in an orifice. Mayonnaise, aside from being a milky smooth condiment that Ethan deeply enjoys, also carries a sexual connotation for male ejaculate. The repeated use of the references to carrots and mayonnaise serves to recast the prurient sexual innuendo of Plaintiff's work into a parody of pornography.

**Plaintiff:** Defendants incessantly ridicule Plaintiff and how the Work reflects himself and his worldview. They lambast his vanity, his smugness, his misogyny through scrutinizing his Work.

ACTIVE\44001191.v2-1/12/17

Whether these critiques are accurate is irrelevant to the fair use inquiry. *See Mattel*, 353 F.3d at 801-02 ("However one may feel about [defendant's] message – whether he is wrong or right, whether his methods are powerful or banal – his photographs [are] parody …."); *Hofheinz*, 2001 WL 1111970, at *4 ("Section 107 does not explicitly distinguish between entertaining and serious, plausible and implausible, or weighty or frivolous commentaries….").

Plaintiff vehemently denies that he shares aspects with his characters, even accusing Defendants of trying to mislead this Court. Brief at 4. Pursuant to Defendants' concurrently filed Request for Judicial Notice, Defendants request judicial notice that in a video Plaintiff posted on his channel he answered the question "are you like your characters" as follows:

> Every character that I write, boy or girl, is an aspect of me. It comes from my brain, obviously. The Bold Guy probably more so than any other character. Because it is the main character that I've created that's heavily influenced and inspired by my real life.
> …
> I share a lot of qualities with the Bold Guy but I'm not the Bold Guy. The Bold Guy is an exaggerated perfect version of me. Of who I wish to be. The ideal that I strive for.

There can be no doubt that – through surrounding Plaintiff's Work with commentary and criticism that employs sarcasm, ridicule and mockery – the Critique Video "reasonably could be perceived as commenting on the original or criticizing it, to some degree." *See Campbell*, 510 U.S. at 583. It transforms the original's meaning from Plaintiff's fantasy into a disgusting depiction of sexuality. If Plaintiff could not perceive this fact before, he must confront it now.

### 2. Plaintiff's Transcript Of Defendants' Critique Video Is Improper

Plaintiff erroneously states that it is appropriate to assess Defendants' Critique Video by reducing Defendants' dialogue to a transcript. Brief at 4 (citing *Adjmi*, 97 F. Supp. 3d at 519).[3]

---

[3] *Adjmi* provided a detailed analysis of both works at issue, one of which was a screenplay (i.e., only appeared in textual form) and used excerpts when "helpful to provide a few examples

Reducing an audiovisual work to a transcript is improper because it strips the secondary work of its expressive value. "Print is fixed in form … the printed word conveys the same meaning no matter the forum or medium in which it is viewed." *Fox News Network, LLC v. TVEyes, Inc.,* 43 F. Supp. 3d 379, 392-93 (S.D.N.Y. 2014). In contrast, in an audiovisual work, the speaker's "tone of voice, arch of an eyebrow, or upturn of a lip can color the entire story, ***powerfully modifying the content***." *Id.* (emphasis added). That is because "a speaker's demeanor, tone, and cadence can often ***elucidate his or her true beliefs*** far beyond what a ***stale transcript*** or summary can show." *Id.* (emphasis added) (quoting *Swatch,* 756 F.3d at 84). As such, Plaintiff's transcript does not assist this Court to determine whether the Critique Video may "reasonably be perceived" as "commenting on the original or criticizing it, to some degree." *See Campbell,* 510 U.S. at 580 and 583.[4]

### 3.    Plaintiffs' Argument That *Elvis* Controls Fails

As discussed, in Section II.A., *supra,* Plaintiff's attempt to use *Elvis* to support the proposition "entertainment" is a valid "purpose" in the fair use analysis has been rejected twice. Nor does it support any of Plaintiff's other arguments. As a threshold matter, *Elvis* dealt with a different purpose: a biographical documentary of Elvis, not the commentary or critique of one of Elvis' specific performances. *Elvis,* 349 F.3d at 629. Second, the Ninth Circuit stated "[o]ne of the most salient selling points on the box of *The Definitive Elvis* is that 'Every Film and Television Appearance is represented.' [and sought to] profit at least in part from the inherent

---

representative of [the work's] treatment of that topic." *Adjmi,* 97 F. Supp. 3d at 516 and 518.

[4] One example of Plaintiff's transcript mischaracterizing the Critique Video is his description of 8:21-8:36. He states his score was "digitally fed into the Infringing Video rather than as background music on the Defendants' computer." Brief at 12. A cursory examination of this clip demonstrates that, during this segment, Ethan clicks his mouse, which pauses the Work and the score – demonstrating it was playing in the background.

entertainment value of Elvis' appearances on such shows…." *Id.* at 628. As such, use of the clips "'serve[d] the ***same intrinsic entertainment value*** that is protected by Plaintiff's copyrights,'" ***i.e., watching Elvis perform***." *Wade*, 2005 WL 774275, at *9 (emphasis added) (quoting *Elvis,* 349 F.3d at 629). Moreover, the Ninth Circuit found that the use was transformative when "the clips play for only a ***few seconds and are used for reference purposes*** while a narrator talks over them or interviewees explain their context in Elvis' career," but not when the clips "play ***without much interruption***" for nearly a minute because they served the "***same intrinsic entertainment value*** that is protected by Plaintiffs' copyrights" *Elvis,* 349 F.3d at 628-29 (emphasis added).

The narrow focus on "same intrinsic entertainment value" has recently been applied to comedy. Comedy is not transformative when the "***only purpose*** served by the extent of defendants' taking is ***identically comedic*** to that of the original authors [and used] extensively for its ***original comedic effect…***". *TCA,* 839 F.3d at 182-83 (emphasis added).

Defendants have not used Plaintiff's Work for its "original comedic effect." The purpose and character of their Critique Video is not to laugh ***with*** Plaintiff's Work, but rather ***at*** Plaintiff's Work and make it seem ridiculous.

### 4. Plaintiff Mischaracterizes the *Equals Three* Decision

Plaintiff's discussion of the *Equals Three* is also misleading. In discussing transformative use, Plaintiff states *Equals Three* is distinguishable because the original works were "point-and-shoot style depictions of events that actually happened," while Plaintiff's Work was a "scripted 5:24 video utilizing actors, a written script, planned cinematography, multiple cameras, and original music composition." Brief at 15. Plaintiff further mischaracterizes *Equals Three* by claiming that an "important differentiator" was that Equals Three's use employed "text, graphics, animation, sound effects, voice overs or video clips" and Defendants did not. *Id.* at 16. Finally, Plaintiff makes the preposterous assertion that the *Equals Three* court did not find the works at

17

issue to be fair use. Each point fails.

First, the "point-and-shoot" nature of the videos played no role in determining whether the videos constituted comment or critique, nor could it.[5] Rather, it was discussed in the context of the second fair use factor (nature of the copyrighted work) and was found to be creative, which was "not particularly important" to the analysis. *Equals Three,* 139 F. Supp. 3d at 1106.

Second, Plaintiff distorts the *Equals Three's* court's analysis on what made the use transformative.[6] The *Equals Three* court made clear that the primary focus is the host's reactions, jokes and commentary, not graphic elements which Plaintiff disingenuously tries to emphasize.

Bewilderingly, Plaintiff claims "most importantly" that the *Equals Three* court did not find the defendant's videos to be fair use. Brief at 16. The court in *Equals Three* would disagree. It said: "on balance, the factors weigh in favor of fair use for all episodes," clearly indicating the court's position on the issue. *Id.* at 1109. The case went to a jury because it was Jukin, not Equals Three, that moved for summary judgment on Equals Three's declaratory relief claim. *Id.* at 1098. By failing to move for summary judgment, Equals Three could not have received judgment in its favor. As such, Plaintiffs description of *Equals Three* should be disregarded.

---

[5] The court in *Equals Three* discussed this point in determining whether Equal Three's use constituted a parody. Ultimately, whether Equal Three's use was a parody was irrelevant because it was found to be comment and critique. *Id.*

[6] Below is the complete analysis:

> Equals Three's episodes directly respond to and highlight the humourous aspects of Jukin's videos. The episodes do so via the host's reactions to the videos, jokes, narration, costumes and graphics. The host's narration does not simply recount what is shown in Jukin's vidoes; instead the hosts makes comments about Jukin's videos that highlight their ridiculousness by creating fictionalized narratives of how the events transpired, using similes, or by directly mocking the depicted events and people.

*Equals Three,* 139 F. Supp. at 1104.

ACTIVE\44001191.v2-1/12/17

### 5. <u>Plaintiff's Remaining Arguments Are Frivolous</u>

Plaintiff makes a handful of other arguments that are easily addressed. First, he claims Defendants never commented on his score. But in his Second Amended Complaint ("SAC"), he only alleges to be the owner of a "creative motion picture collection," not an independent copyright in a music composition or sound recording. SAC, ¶ 9. As the definition of "motion picture" makes clear, a motion picture is an audiovisual work that includes the accompanying sounds. 17 U.S.C. § 101.

Second, Plaintiff misguidedly tries to imply that bad faith may be at issue. But Plaintiff cites no post-*Campbell* case law where it has been applied. Currently, bad faith plays a miniscule role in the fair use analysis. *See Swatch,* 756 F.3d at 83 (citing *Blanch,* 467 F.3d at 256). Mere copying without permission is insufficient and Plaintiff has not alleged any conduct that could constitute bad faith. *See Blanch,* 467 F.3d at 256 (quoting *Campbell,* 510 U.S. at 585 n. 18).

Third, Plaintiff desperately tries to conflate the third fair use factor (amount and substantiality of portion used) into his transformative use analysis. Brief at 8 (citing *Warner Bros. Entm't, Inc. v. RDR Books,* 575 F. Supp. 2d 513, 544 (S.D.N.Y. 2008)); *Campbell,* 510 U.S. at 587). First, *Warner Bros.* dealt with a different purpose and character (a reference guide) from the one at issue here. 575 F. Supp. at 541. Second, in the sentence immediately following the quote cited in Plaintiff's Brief, the court stated that this point would be "discussed more fully in analyzing the 'amount and substantiality'" factor. *Id.* at 542. As for *Campbell,* this cite comes from the section analyzing the third factor. *Campbell,* 510 U.S. at 587. This interpretation makes sense, because as discussed in Section II.D, *infra,* the amount and substantiality of the use must be assessed in light of the purpose of the character of the use.

Therefore, for these reasons, Plaintiff's remaining arguments should be disregarded.

### C.     <u>Plaintiff Fails To Demonstrate The Second Factor Weighs In His Favor</u>

Plaintiff concedes that the second fair use factor (nature of the copyrighted work) is given little weight when the work is transformative. Brief at 18-19. Nor can Plaintiff dispute that "[t]he second factor has rarely played a significant role in the determination of a fair use dispute." *Author's Guild, Inc. v. Google, Inc.,* 802 F.3d 202, 220 (2d Cir. 2015). In light of Defendants' transformative use of Plaintiff's Work and the little – if any – weight given to this factor, Plaintiff fails to demonstrate this factor weighs in his favor.

### D.     <u>Plaintiff Fails To Demonstrate The Third Factor Weighs In His Favor</u>

As an initial matter, Plaintiff's Brief is internally inconsistent in describing this factor. He begins by stating that Defendants could only use what was "absolutely necessary" (Brief at 1), to just "necessary" (*Id.* at 1-3, 8, 14, 19), to "reasonably necessary" (*Id.* at 8, 17) to "reasonable" (*Id.* at 19).[7] Plaintiff's consistent retreat is due to law contradicting his absolutist position.

"The law does not require that the secondary artist may take no more than is necessary." *Cariou,* 714 F.3d at 710 (citing *Campbell,* 510 U.S. at 588; *Leibovitz,* 137 F.3d at 114). The law only requires that "the amount and substantiality of the portion used in relation to the copyrighted work as a whole are ***reasonable in relation to the purpose of the copying***." *TCA,* 839 F.3d at 185 (emphasis added; internal quotes and ellipsis omitted) (quoting *Campbell,* 510 U.S. at 586); *Blanch,* 467 F.3d at 257. This reasonableness standard ensures that transformative works enjoy the "fair use doctrine's guarantee of ***breathing space*** within the confines of copyright." *Adjmi,* 97 F. Supp. 3d at 530 (emphasis added) (quoting *Campbell,* 510 U.S. at 579).

---

[7] Plaintiff repeatedly states that Defendants' used "virtually" all of Plaintiff's Work, yet concedes it was approximately 60%. Brief at 19.

"[W]here an evaluation or description is being made, copying the exact words may be the only valid way precisely to [*sic*] report the evaluation." *Swatch,* 756 F.3d at 85.

Defendants' use of Plaintiff's Work is reasonable in light of their critique. The excerpts are short, usually capturing two to four lines of dialogue so they can be scrutinized. A portion of the opening credits is used to help set up the campiness of the entire video and provide Defendants' wave-dance parody of the credits context. The brief exchanges of dialogue provide context for Defendants mocking the dialogue, plot and misogyny of Plaintiff's Work. Without showing the complete exchange, Defendants would be unable to properly refer to what they were ridiculing. The clips from the parkour chase scene are equally brief. They usually involve shots of the Woman performing a certain physical feat with Plaintiff's character doing the same. Showing these brief clips assist Defendants to point out in multiple ways the chase scene is ridiculousness and atavistic in nature. The longest clip contains a voiceover, which Defendants ridicule by providing sarcastic encouragement to Plaintiff's character. The ending assists Defendants in making their entire thesis about the video clear: it is a male fantasy containing all the trapping of a pornographic film except it leaves the viewer hanging by not consummating the act. As such, the amount and substantiality of Plaintiff's Work that Defendants' used for their transformative critique was reasonable in light of their purpose: to critique the Work.

### E. <u>Plaintiff Fails To Demonstrate The Fourth Factor Weighs In His Favor</u>

Critically, Plaintiff does not dispute that no market harm arises from critical works. *See* Motion at 16-16. Nor does Plaintiff allege there is a derivative market for the type of use Defendants made of his Work. *See Id.* Rather, his entire argument rests on his belief that Defendants' Critique Video was not transformative (i.e., not a critical work) and serves to supplant his Work. As demonstrated in Section II.B., *supra*, Defendants' use is transformative comment and criticism by mocking and ridiculing Plaintiff's Work. No one who watches

21

Defendant's video from start to finish would consider Defendants' intro and subsequent ridicule of chopped up pieces of Plaintiff's Work as a substitute for the original.[8]

### F.    Plaintiff Concedes He Has No Claim For Misrepresentation

Plaintiff persists in his misinterpretation of 17 U.S.C. § 512(f). When a person issues a takedown notice, the content is made inaccessible. *See Id.* § 512(g)(2)(A). An inadvertent takedown notice would violate Section 512(f)(2) because the "material or activity was removed or disabled by mistake or misidentification."

Even assuming *arguendo* that Section 512(f)(2) applies to counter-notifications via 17 U.S.C. § 512(g)(3)(C) (which concerns a website's immunity to liability), he still cannot state a claim for relief. That Section only requires that the person issuing the counter-notification swear under penalty of perjury that he has "a good faith belief" that the content was taken down as a result of mistake or misidentification. Plaintiff pleads no facts showing Defendants did not have a good faith belief their content was improperly taken down, let alone any representation that falls within Section 512(f)(2). Indeed, it is the "subjective good faith belief" – not the objective standard – that applies to issuers of takedown notices. *Lenz v. Universal Music Corp.,* 815 F.3d 1145, 1153–54 (9th Cir. 2016), *cert. denied,* 137 S. Ct. 416 (2016). It would be anomalous to have one standard apply to takedown notices and another to counter-notifications, particularly in light of the statute. The entire point of defending this lawsuit is that Defendants adamantly

---

[8] Plaintiff distorts *Brownmark Films, LLC v. Comedy Partners,* 582 F.3d 687 (7th Cir. 2012), claiming that the sole point of the reference to "Internet Money" is that "viewers who watch a parody on television are not less likely to watch the original video on the Internet." Brief at 21. As Defendants quoted in their Motion: "As the *South Park* episode aptly points out, there is no 'Internet money' for the ***video itself on YouTube, only advertising dollars that correlate with the number of views the video has had***." *Brownmark,* 582 at 693 (emphasis added).

ACTIVE\44001191.v2-1/12/17

believe they engaged in fair use. Plus, if the Critique Video is transformative, this claims fails under any scenario. Therefore, Plaintiff's claim must be dismissed without leave to amend.

### G. Plaintiff Has No Claim For Defamation

Adding insult to injury, Plaintiff attempts to sue Defendants for defamation because they took to the airwaves to defend themselves. Plaintiff does not dispute that "[a] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012). Rather, he says this is "a matter for evidentiary discovery, not for a motion for judgment on the pleadings." Brief at 25. But the *Biro* court decided this very issue on a motion to dismiss because the alleged defamatory statement "would not have a different effect on the mind of the reader." *Id.* Therefore, Plaintiff's assertion is simply false.

"As a defense, 'truth need not be established to an extreme literal degree. Provided that the defamatory material on which the action is based is substantially true (***minor inaccuracies are acceptable***), the claim to recover damages must fail." *Ingber v. Lagarenne,* 299 A.D. 2d 608, 609 (2002) (quoting *Love v Morrow & Co.,* 193 A.D. 2d 586, 587 (1993)).

The full alleged defamatory statement, as found in paragraph 41 of the SAC, is:[9]

"So, several months pass and nothing happens and then we get an email from Bold Guy's lawyer to Ryan [Defendants' prior counsel], he says he already wrote up the lawsuit, and he says, 'remove it, never talk about me again or this situation and pay me $4,000."

Plaintiff's entire defamation claim rests on the theory that people would have treated him differently if only Defendants mentioned that he had contacted them before his lawyers. He claims that, by failing to do so, it gave the "false ***insinuation*** of [Plaintiff's] greed and

---

[9] Plaintiff erroneously argues that the alleged defamatory statement is "admittedly false." That is false. *See* SAC, ¶¶ 39-42, 47-52, 71, 73-77; First Amended Answer, ¶¶ 39-42, 47-52, 71, 73-77.

litigiousness." SAC, ¶ 50 (emphasis added). But Plaintiff cannot deny that his lawyers reached out to their prior counsel and made the demands contained in the statement. He has not identified any other statement that was false and even admits that the Lawsuit Video "accurately reported the substance of Plaintiff's Complaint…." Brief at 25. As such, the substantial truth doctrine applies and Plaintiff's defamation claim must be dismissed with prejudice.

Defamation claims "based on the *omission* of facts" require an omission resulting in "*materially* changing the meaning of the statement expressed." *Biro,* 883 F. Supp. 2d at 466 (emphasis added). The notion that people would have not have thought Plaintiff was greedy and litigious, but for the omission that he communicated with Defendants before his lawyers, is preposterous. Plaintiff's email was a threat of litigation. The letter gave Defendants 24 hours to take down the Critique Video or face a lawsuit seeking statutory damages, profits, costs and attorneys' fees. It expressed an utter refusal to entertain any claim of fair use. Essentially, it told Defendants to accept liability and forego their right to fair use or face a lawsuit for monetary damages. It is absurd to think people would have thought better of Plaintiff had Defendants just shared this communication. Furthermore, if this Court finds that Defendants' Critique Video was fair use, the statement would undoubtedly not be defamatory. The email denies even the possibility the Critique Video was fair use and this Court's ruling would prove otherwise.

Plaintiff also argues the substantial truth doctrine should not apply because Defendants only cite law from implied defamation cases. Brief at 24-25. But the substantial truth doctrine applies to both express and implied defamation claims. *See Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34 (2014) ("Insofar as plaintiffs' complaint is premised on express defamation, it must be dismissed, as these claims are based on substantially true statements that are not reasonably susceptible of defamatory connotations.").

ACTIVE\44001191.v2-1/12/17

Plaintiff's reference to implied defamation claims is odd because he has pled a defamation by implication claim. The SAC itself pleads that the statement was made "to paint Mr. Hoss as a greedy and litigious bully…" and gave the "false *insinuation* of [Plaintiff's] greed and litigiousness." SAC, ¶¶ 47, 50 (emphasis added). In his Brief, Plaintiff argues that the "*implication* [of Defendants' statements was] that Plaintiff was litigious and greedy…." *Id.* at 25 (emphasis added). This is the very definition of defamation by implication.

Under New York law, "[d]efamation by implication is premised not on direct statements but on *false suggestions, impressions and implications* arising from otherwise truthful statements" *Stepanov,* 120 A.D.3d at 35 (2014) (emphasis added) (quoting *Armstrong v. Simon & Schuster,* 85 N.Y.2d 373, 380–381 (1995)); *Biro*, 883 F. Supp. 2d at 464.

> To survive a motion to dismiss a claim for defamation by implication where the factual statements at issue are substantially true, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference.

*Stepanov*, 120 A.D.3d at 37–38; *Kavanagh v. Zwilling,* 578 Fed. App'x 24, 24-25 (2d Cir. 2014).

Plaintiff does not and cannot make this showing. He cannot show that the Lawsuit Video, taken as a whole, could impart a defamatory inference (i.e., that he is litigious and greedy solely because he never communicated with Defendants first) – particularly since he admits everything else contained in the Lawsuit Video is accurate. Nor can Plaintiff show that Defendants intended or endorsed others to believe that he is greedy and litigious merely because he failed to contact them before his lawyers. As such, Plaintiff's defamation claim must be dismissed with prejudice.

## III.   <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully ask this Court to GRANT their Motion and dismiss the SAC without leave to amend and DENY Plaintiff's Cross-Motion.

DATED:  January 13, 2017                    **FOX ROTHSCHILD LLP**


By: <u>/s/ Jeffrey S. Kravitz</u>
   Caroline A. Morgan
   Fox Rothschild LLP
   100 Park Avenue, 15th Fl.
   New York, NY 10017
   Telephone: 212-878-7900
   Fax: 212-692-0940

   Jeffrey S. Kravitz (admitted *pro hac vice*)
   Rom Bar-Nissim (admitted *pro hac vice*)
   Fox Rothschild LLP
   1800 Century Park East, Suite 300
   Los Angeles, CA 90067-1506
   Telephone: 310-598-4150
   Facsimile: 310-556-9828
   Attorneys for Defendants

ACTIVE\44001191.v2-1/12/17