**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATT HOSSEINZADEH,

                              *Plaintiffs*,

– against –

ETHAN KLEIN and HILA KLEIN,

                              *Defendant*s.

**Civ. Action No.**: 16-cv-3081 (KBF)
**ECF Case**

**DECLARATION OF MATT HOSSEINZADEH IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT**

1

MATT HOSSEINZADEH ("**Plaintiff**"), hereby declares under penalty of perjury as prescribed by 28 U.S.C. § 1746:

1. I am a resident of the State of California. This declaration is submitted in support of Plaintiff's motion for partial summary judgement against Ethan Klein ("**Mr. Klein**") and Hila Klein ("**Ms. Klein**") (collectively the "**Defendants**").

2. This declaration is submitted on my own personal knowledge and after a review of any relevant documents.

3. I hereby incorporate by reference all of the allegations of my Second Amended Complaint (Dkt. 26) as if fully restated herein.

4. I am a recognized filmmaker, having a cult following, with original film productions on the popular YouTube.com ("**YouTube**") channel "MattHossZone," some of which productions have view counts exceeding 10 million views.

5. I display my original creative film and music productions on my YouTube.com ("**YouTube**") channel "MattHossZone" (accessible at https://www.youtube.com/user/MattHossZone).

6. In addition to earning an income and garnering licensing opportunities as detailed below, the MattHossZone serves as my artistic portfolio which, by publicly displaying my creative work, I hope to garner the attention of professional film studios as a potential director and producer of feature works.

7. I have registered and am the sole owner of the copyright and all other rights in and to the creative motion picture collection of works titled "The Bold Guy & Horny Tony Volume 1" (U.S. Copyright Reg. No. Pau 3-770-968) (the "**Collection**") which collection includes the individual Work.

8. As an independent filmmaker struggling to achieve mainstream recognition, I invest virtually all of my personal income into my projects—hiring actors, leasing equipment, as well as functioning in multiple roles as writer, director, producer, cinematographer, actor, editor, and even stunt man for my projects.

9. I also compose all of the original soundtrack works for my film projects which music works have also received independent recognition.

10. My "The Bold Guy & Horny Tony Volume 1" collection, including the Work, was created as a collection of comedic works, meant to highlight and satirize modern day courting rituals by featuring an implausible hero, the "Bold Guy," who seduces women in equally implausible, awkward, and entertaining scenarios such as via a dance competition, a Parkour running competition, chatting with a vampire, battling with a demon, among others.

11. On February 15, 2016, Defendants posted a video on the Ethan and Hila YouTube channel that copied and displayed segments comprising 3:18 minutes of Plaintiff's 5:24 minute Work (the "**Infringing Video**").

12. The Infringing Video was created and publicly displayed without license from me.

13. On April 2, 2016, I emailed the Defendants to request that they immediately remove the Infringing Video from YouTube and cease all future infringement of the Work.

14. On April 2, 2016, Mr. Klein on behalf of the Defendants responded to me via email, refusing to cease their infringement, claiming fair use exemption, directing me to contact their attorney, and daring me to file a takedown request with YouTube pursuant to the Digital Millennium Copyright Act ("**DMCA**"), stating that the Defendants would dispute such takedown notice and that the "[Infringing Video] will be reinstated within two weeks" because the

Defendants have "dealt with this many times," and such allegations of infringement were evidently a "matter of routine to [them]."

15. On April 23, 2016, I submitted to YouTube a notification, pursuant to 17 USC § 512(c)(3) (the "**DMCA**"), requesting that YouTube take down the Infringing Video.

16. On April 26, 2016, the Defendants submitted to YouTube a counter notification, pursuant to 17 USC § 512(g)(3), affirming under penalty of perjury that the Infringing Video was improperly removed because it was, among other reasons, a fair use and "noncommercial."

17. I then filed this action against Defendants, claiming copyright infringement of my Work, on April 26, 2016.

18. I have been diligent about enforcing my copyrights in my creative works.

19. I have in the past written numerous cease and desist requests and DMCA take-down requests with respect to my creative work, and those requests, excepting the instant matter, have always been honored.

20. I generate an income from my creative works, including the Work, in the form of advertising that YouTube airs with my work.

21. I also generate income from my work, including the Work, in the form of revenues I receive from sales of the various songs that are included in the original soundtracks to my works.

22. My ability to monetize the Work on YouTube is directly correlated to the number of "views" that my Work receives from YouTube users viewing the Work on my YouTube Channel.

23. When a YouTube user watches nearly the entirety of my Work on one YouTube channel, such as the Defendants' channel, such a user is unlikely to then re-watch the same Work

4

on my YouTube channel—this is simply a matter of how YouTube and human tastes work.

24. As a filmmaker and composer of the original music in the soundtrack to my Work, I can make additional licensing revenues from third-parties who wish to license my Work or parts of my work (such as specific scenes or the music) for their own projects.

25. I have in several instances received requests to either license the advertising space to my work (outside of YouTube advertising) as well as to license the use of the original music in my work.

26. It is my understanding and experience that the number of subscribers a YouTube channel has determines the number of YouTube users who will become immediately aware of any new video posted on the channel.

27. YouTube channel subscribers are more likely than a non-subscribing YouTube user to visit and view a channel's newly-posted video.

28. The number of video views is one major factor in deciding the monetization value of a YouTube video in that (i) each view generates some advertising income to a video that utilizes YouTube advertising; and (ii) each full view of a video adds to the probability that YouTube's proprietary video promotion algorithm will promote that video to non-subscribing users as a video worth watching.

29. Thus, the more channel subscribers a YouTube channel has, the more views its new videos will receive, and the more non-subscriber focused promotion that channel will receive, and in the end the channel will accumulate even more subscribers, more views, and more advertising revenue.

30. The number of subscribers a YouTube channel has is also an indicator of the number of loyal fans that the channel creators have.

31. For example, after the Defendants, following the commencement of this lawsuit, posted their video "We Are Being Sued" in which they denigrated me for suing them, countless YouTube users, likely Defendants' fans and subscribers, proceeded to post negative comments about me and my videos throughout my and Defendants' channels, sent me threats and other hate-mail, contributed negative comments and reviews to my online videos and music sales pages.

32. The publication of the "We Are Being Sued" videos resulted in a major YouTube controversy, even generating news coverage in mainstream media.

33. The YouTube channel PrankInvasion (https://www.youtube.com/user/PrankInvasion) has over 2.5 million subscribers.

34. My channel MattHossZone (https://www.youtube.com/user/MattHossZone) has just over 170,000 subscribers.

35. Exhibit 1 is a true and accurate copy of the United States Copyright Registration Reg. No. Pau 3-770-968 which includes the Work.

36. Exhibit 2 is a true and accurate copy of the Infringing Video.

37. Exhibit 3 is a true and accurate copy of the Work.

38. Exhibit 4 are true and accurate copies of my email exchanges with Defendants.

39. Exhibit 5 is a true and accurate copy of Defendants' counter-notification to YouTube.

40. Exhibits 7 through 21 are true and accurate copies of discrete segments of the Infringing Video.

41. Exhibit 22 are true and accurate copies of examples of third-party requests to license my work either (i) outside of the YouTube advertising context; and/or (ii) license the

music that is part of my work.

42. Exhibit 23 are true and accurate copies of various takedown requests and cease & desist communications I have had with other parties that have improperly used my work.

43. Exhibit 24 is a true and accurate copy of Defendants' PrankInvasion reaction video.

44. Exhibit 25 is a true and accurate copy of Defendants' Who Are The Fine Brothers? Video.

45. Exhibit 26 is a true and accurate copy of Defendants' Marshal Pope Video.

46. Exhibit 28 are true and accurate copies of hate mail and other negative correspondence directed at me following the publication of Defendants' We Are Being Sued video.

47. Exhibit 29 is a true and accurate copy of the Defendants' Censorship On YouTube Video.

Dated: February 13, 2017

DocuSigned by:

*Matt Hosseinzadeh*
8749365B4CD84C9...

Matt Hosseinzadeh