Caroline A. Morgan
Fox Rothschild LLP
100 Park Avenue, 15th Fl.
New York, NY 10017
Telephone: 212-878-7900

Jeffrey S. Kravitz (admitted *pro hac vice*)
Rom Bar-Nissim (admitted *pro hac vice*)
Fox Rothschild LLP
1800 Century Park East, Suite 300
Los Angeles, California 90067-1506
Telephone: 310-598-4150
Attorneys for Defendants

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATT HOSSEINZADEH,<br><br>    *Plaintiff,*<br><br>– vs –<br><br>ETHAN KLEIN and HILA KLEIN,<br><br>    *Defendants.* | **Civ. 16-cv-3081 (KBF)**<br><br>**DEFENDANTS' LOCAL RULE 56.1 COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

   Pursuant to Local Rule 56.1 of the Civil Rules of this Court, Defendants Ethan and Hila Klein (collectively, "Defendants"), hereby submit this Counter-Statement of Undisputed Material Facts as to which there is no genuine issue to be tried:[1]

   1.  Plaintiff Matt Hosseinzadeh ("Plaintiff"), brings this action against Defendants pursuant to the Copyright Act and New York law, alleging that Defendants engaged in copyright

---

[1] All exhibits referenced may be found in the concurrently filed Compendium of Exhibits.

infringement, misrepresented their DMCA counter-notification and defamed him. *See* Exh. 114 (Second Amended Complaint, filed June 22, 2016).

**Plaintiff Matt Hosseinzadeh And The Bold Guy Series**

2.  Plaintiff is an amateur videomaker who uploads his videos to his YouTube channel, MattHossZone. Exh. 115 (Deposition of Plaintiff Matt Hosseinzadeh, dated January 4, 2017, ("Hoss Depo.")), 19:9-11; 22:21-23; 23:25-24:13; 38:23-25; 48:11-16; 201:15-23.

3.  Plaintiff is the writer, director, producer and star of the "Bold Guy" series ("Series"), which he created in 2011. Exh. 115 (Hoss Depo.), 67:24-65:10; 194:11-13.

4.  Plaintiff's copyright is for an unpublished compilation of 24 episodes of the Series, along with 11 episodes of his Horny Tony series. Exh. 116 (Plaintiff's Copyright Certificate); Exh. 4 (Bold Guy Picks Up Tough Girl); Exh. 5 (Bold Guy Picks Up Beach Girl); Exh. 6. (Bold Guy vs. Angry Guy ( + Parkour)); Exh. 7 (Bold Guy vs. Bitchy Girl); Exh. 8 (Bold Guy Picks Up Yoga Girl (Preview)); Exh. 9 (Bold Guy Picks Up MILF); Exh. 10 (Pillow Talk with a MILF (Bold Guy)); Exh. 11 (Bold Guy Picks Up Girl During Parkour (Mystery Girl)); Exh. 12 (Pillow Talk with Mystery Girl (Bold Guy)); Exh. 13 (Bold Guy Picks Up Dream Girl); Exh. 14 (Pillow Talk with Dream Girl); Exh. 1 (Bold Guy vs. Parkour Girl); Exh. 15 (Bold Guy vs. Dance Girl (Freestyle Techno / House Battle); Exh. 16 (Pillow Talk with Dance Girl (Bold Guy)); Exh. 17 (Bold Guy vs. Vampire Girl (part 1)); Exh. 18 (Bold Guy vs. Vampire Girl (part 2)); Exh. 19 (Bold Guy Picks Up Bisexual Girl); Exh. 20 (Pillow Talk with Bisexual Girl (Bold Guy)); Exh. 21 (Bold Guy Picks Up Girl During Parkour (Bus Stop Girl)); Exh. 22 (Bold Guy vs. Death (Parkour)); Exh. 23 (Bold Guy & Horny Tony vs. Psychic Girl (Part 2)); Exh. 24 (The Bold Guy + Horny Hannah); Exh. 25 (Horny Hannah's Search for the Bold Guy (part 1)); Exh. 26 (Bold Guy vs. Tall Guy (Horny Hannah's Search part 2).

5.      *Bold Guy vs. Parkour Girl* ("The Work" or "Work") is the twelfth episode in the Series and was uploaded unto YouTube in August 2013. Exh. 115 (Hoss Depo.), 62:24-63:13; 64:11-25.

6.      Plaintiff testified that the premise of the Series is that "[t]he Bold Guy approaches women and tries to flirt with them and possibly date them" and uses confidence and humor to attract to get women to date him. Exh. 115 (Hoss Depo.) 70:5-11; 64:16-25; 101:19-102:9; Exh. 1 (Bold Guy vs. Parkour Girl); Exh. 4 (Bold Guy Picks Up Tough Girl); Exh. 5 (Bold Guy Picks Up Beach Girl); Exh. 6. (Bold Guy vs. Angry Guy ( + Parkour)); Exh. 7 (Bold Guy vs. Bitchy Girl); Exh. 8 (Bold Guy Picks Up Yoga Girl (Preview)); Exh. 9 (Bold Guy Picks Up MILF); Exh. 10 (Pillow Talk with a MILF (Bold Guy)); Exh. 11 (Bold Guy Picks Up Girl During Parkour (Mystery Girl)); Exh. 12 (Pillow Talk with Mystery Girl (Bold Guy)); Exh. 13 (Bold Guy Picks Up Dream Girl); Exh. 14 (Pillow Talk with Dream Girl); Exh. 15 (Bold Guy vs. Dance Girl (Freestyle Techno / House Battle); Exh. 16 (Pillow Talk with Dance Girl (Bold Guy)); Exh. 17 (Bold Guy vs. Vampire Girl (part 1)); Exh. 18 (Bold Guy vs. Vampire Girl (part 2)); Exh. 19 (Bold Guy Picks Up Bisexual Girl); Exh. 20 (Pillow Talk with Bisexual Girl (Bold Guy)); Exh. 21 (Bold Guy Picks Up Girl During Parkour (Bus Stop Girl));

7.      Plaintiff described BG as follows: "He simply takes action without fear, without worrying what other people think, what other people's approval of his behavior is." Exh. 27 (Matt Hoss Answers Your Questions 2 (Bold Guy, Horny Tony)) ("Q&A #2).

8.      Some episodes involve female characters openly hostile to BG but, by the end, suddenly becomes attracted to him. Exh. 1 (The Work); Exh. 4 (Bold Guy Picks Up Tough Girl); Exh. 5 (Bold Guy Picks Up Beach Girl); Exh. 7 (Bold Guy vs. Bitchy Girl); Exh. 9 (Bold Guy

Picks Up MILF); Exh. 13 (Bold Guy Picks Up Dream Girl); Exh. 19 (Bold Guy Picks Up Bisexual Girl).

    9.    In some episodes, BG is bare chested or with his arms exposed. Exh. 5 (Bold Guy Picks Up Beach Girl); Exh. 8 (Bold Guy Picks Up Yoga Girl (Preview)); Exh. 10 (Pillow Talk with a MILF (Bold Guy)); Exh. 11 (Bold Guy Picks Up Girl During Parkour (Mystery Girl)); Exh. 12 (Pillow Talk with Mystery Girl (Bold Guy)); Exh. 13 (Bold Guy Picks Up Dream Girl); Exh. 14 (Pillow Talk with Dream Girl); Exh. 1 (Bold Guy vs. Parkour Girl); Exh. 16 (Pillow Talk with Dance Girl (Bold Guy)); Exh. 18 (Bold Guy vs. Vampire Girl (part 2)); Exh. 20 (Pillow Talk with Bisexual Girl (Bold Guy)); Exh. 21 (Bold Guy Picks Up Girl During Parkour (Bus Stop Girl)); Exh. 22 (Bold Guy vs. Death (Parkour)).

    10.    Some episodes contain a post-coital conversation between BG and the female. Exh. 10 (Pillow Talk with a MILF (Bold Guy));  Exh. 12 (Pillow Talk with Mystery Girl (Bold Guy)); Exh. 14 (Pillow Talk with Dream Girl); Exh. 16 (Pillow Talk with Dance Girl (Bold Guy)); Exh. 18 (Bold Guy vs. Vampire Girl (part 2)); Exh. 20 (Pillow Talk with Bisexual Girl (Bold Guy)).

    11.    Some episodes of the Series contain parkour. Exh. 1 (Bold Guy vs. Parkour Girl); Exh. 6. (Bold Guy vs. Angry Guy ( + Parkour)); Exh. 11 (Bold Guy Picks Up Girl During Parkour (Mystery Girl)); Exh. 21 (Bold Guy Picks Up Girl During Parkour (Bus Stop Girl)); Exh. 22 (Bold Guy vs. Death (Parkour)).

    12.    Plaintiff testified he "share[s] characteristics with all the characters [he] create[s]. They're all parts of [his] psyche." Exh. 115 (Hoss Depo.) 97:5-9; Exh. 27 (Q&A #2).

13. Plaintiff confirmed he received the "bold" moniker in a real life exchange where he approached a woman, got her number and was told he was bold. This interaction inspired the BG and his name. Exh. 27 (Q&A #2); Exh. 115 (Hoss Depo.) 99:18-24.

14. Prior to this litigation, Plaintiff explained BG as follows in a Q and A with his fans:

> Every character that I write, boy or girl, is an aspect of me. It comes from my brain, obviously. The Bold Guy probably more so than any other character. Because it is the main character that I've created that's heavily influenced and inspired by my real life.
> …
> I share a lot of qualities with the Bold Guy but I'm not the Bold Guy. The Bold Guy is an exaggerated perfect version of me. Of who I wish to be. The ideal that I strive for.

Exh. 27 (Q&A #2); Exh. 115 (Hoss Depo.), 86:7-24

15. Plaintiff testified it is factually false to describe BG as his alter ego. Exh. 115 (Hoss Depo.) 212:8-13.

**Plaintiff's Intent For The Work**

16. Plaintiff testified that he does not analyze his works and leaves it to the viewer to interpret them. Exh. 115 (Hoss Depo), 71:8-19.

17. Plaintiff testified that, as a factual matter, his works are not misogynistic. Exh. 115 (Hoss Depo.), 216:3-11; 213:15-21.

18. Plaintiff testified the Work is intended as "social satire" and "pokes fun at social politics." Exh. 115 (Hoss Depo.) 74:19-75:25. He testified that the theme of the Work is "[a] guy is chasing a girl and flirting with her," which is shown when the female character ("Woman") says "catch me" with a subsequent chase and, once BG catches her, turning the tables. *Id*. at 72:8-24. Plaintiff testified he intended to convey a message about sexism and the objectification

5

of women by having the "two characters turn the tables on each other and flirt with each other and chase each other." He had no message about pornography. *Id.* at 74:19-75:25.

**Defendants Ethan and Hila Klein**

19. Defendants are a married couple who make comedy videos on YouTube. In 2015, Defendants were voted by Reddit users as YouTubers of the Year. Exh. 117 (Deposition of Ethan Klein, dated December 29, 2016 ("Klein Depo."), 36:17-19, 30:11-17; Declaration of Ethan and Hila Klein ("Klein Decl."), ¶ 2.

20. Defendants have two channels: their primary channel H3H3 Productions ("H3H3") and secondary channel Ethan and Hila ("E&H"). Defendants provide a variety of comedic content on their channels, including sketches, vlogs and reaction videos. Klein Decl., ¶ 3; Exh. 117 (Klein Depo.), 24:20-25:11, 29:5-30:2, 30:18-24, 31:17-20, 46:9-11, 49:5-9, 49:16-50:12; 53:21-24.

21. On election night, NBC News quoted Ethan's tweet on the election opposite one by House Speaker Paul Ryan. Exh. 31 (My Thoughts On The Election).

22. Defendants have made videos commenting on politics. Klein Decl., ¶ 4; *see e.g,* Exh. 31 (My Thoughts On The Election); Exh. 33 (How Fake News Goes Viral); Exh. 34 (Why is Donald Trum so TRIGGERED?); Exhibit 36 (Veterens Days DEALS and FREEBIES!!); Exh. 38 (Who I'm Voting for President re: Case Neistat); Exhibit 39 (Everyone Needs to Stop Getting TRIGGERED); Exh. 32 (YouTube is Not Being Honest with Us); Exh. 35 (YouTube Might Make Your Favorite Channel Disappear); Exh. 40 (Interview with HUGH MUNGUS!); Exh. 41 ($140,000 RAISED!!! Interview with Hugh Mungus); Exh. 37 (Leave Ken Bone Alone!); Exh. 42 (Interview with Ken Bone).

6

23.     Defendants have made videos commenting on intellectual property and legal issues. Klein Decl., ¶ 5; *see e.g.,* Exh. 117 (Klein Depo.), 138:5-24, 139:5-19, 142:5-11;143:6-147:9, 148:3-150:16, 157:3-14, 158:4-159:2, 161:14-162:11, 162:25-164:2, 165:7-167:12; Exh. 43 (SoFloAntonio – h3h3 reaction video); Exh. 44 (SoFloAntonio's Facebook Page – h3h3 reaction video); Exh. 45 (THE SOFLO FACEBOOK RANT); Exh. 46 (IN RESPONSE TO SOFLO); Exh. 47 (Embracing the Meme with SoFloAntonio); Exh. 48 (The Return of SOFLO); Exh. 49 (The Fine Bros Rant); Exh. 50 (How to Dispute a Strike – DMCA Process Explained); Exh. 51 (Your Privacy At Risk); Exh. 3 (We're Being Sued ("Lawsuit Video"); Exh. 52 (A new chapter for fair use on YouTube); Exh. 53 (The Facebook Scam); Exh. 54 (YouTube's New Program is Horrible); Exh. 55 (Thank You YouTube); Exh. 56 (Why Doesn't YouTube Explain Anything).

24.     Defendants have made videos commenting on inappropriate online content. Klein Decl., ¶ 6; *see e.g.,* Exh. 57 (Toy Channels are Ruining Society); Exh. 58 (The Baby Syringe Channel is DISTURBING); Exh. 59 (WHAT ARE THESE PRANKSTERS DOING?!); Exh. 60 (This Weird Toy Channel is Freaky); Exh. 61 (Webs, Tiaras, and Bradberries); Exh. 62 (Why Does This Exist in Minecraft?!); Exh. 63 (Deception, Lies, and CSGO); Exh. 64 (Pranks in the Hood – h3h3 reaction video); Exh. 65 (Feeding the Homeless – h3h3 reaction video); Exh. 66 (How Does A Homeless Man Spend $100 – h3h3 reaction video); Exh. 67 ($100 homeless man dies – Where is the money JoshPalerLin?); Exh. 68 (The Deleted Social Experiment – h3h3 reaction video); Exh. 69 (KILLING BEST FRIEND PRANK – h3h3 reaction video); Exh. 70 (The Dangers of Social Media – h3h3 reaction video); Exh. 71 (The Dangers of Social Media (Boys Edition!) – h3h3 reaction video; Exh. 72 (PRANKSTERS GO TO PRISON); Exh. 73 (Transgender in Woman's Bathroom); Exh. 74 (Joey Salads – h3h3 reaction); Exh. 75 (Social

7

Experiments with Joey Salads); Exh. 76 (How to Traumatize Your Children PRANK); Exh. 77 (Salad Lives Matter Ft. Joey Salads); Exh. 78 (How Pranksters Are Ruining Society…); Exh. 79 (Interview with Joey Salads); Exh. 80 (How to pick up girls – h3h3 reaction video); Exh. 81 (The Surprise Kiss – h3h3 reaction video); Exh. 82 (VitalyzdTv – h3h3 reaction video); Exh. 83 (Expert Village – h3h3 reaction video); Exh. 84 (The Return of Patrice Wilson); Exh. 85 (Alison Gold – Chinese Food – h3h3 reaction video); Exh. 86 (Alison Gold – ABCDEFG – h3h3 reaction video); Exh. 87 (A Very Classy Music Video (Gone Fogel)); Exh. 88 (John Sakars – h3h3 reaction video); Exh. 89 (Revisiting John Sakars); Exh. 90 (Enema Tutorial – h3h3 reaction video); Exh. 91 (Revisiting Rain Florence); Exh. 92 (Kissing Pranks – h3h3 reaction video); Exh. 93 (PrankInvasion – h3h3 reaction video); Exh. 94 (It's Time to Stop); Exh. 95 (The Return of Prank Invasion); Exh. 117 (Klein Depo.), 71:12-74:21, 151:7-155:2, 185:23-186:17, 187:1-188:2, 188:14-189:11, 189:19-190:25, 191:10-192:13, 192:22-195:16, 195:25-198:9, 198:18-201:13; 208:23-214:15.

   25. Defendants have critiqued the YouTube channel, Prank Invasion, for producing sexually inappropriate content. Prank Invasion produces "kissing prank" videos. These videos are scripted and show the host approaching women publicly and pranking them into kissing him or fellatio. Ethan testified the crux of their critique of Prank Invasion is for creating a "false reality in which [the host] was promoting lewd behavior … enticing kids to kind of go out and try to commit what could only be construed as sexual assault" and women are easy prey for alpha males audacious enough to push women well beyond their comfort zone. Defendants made this point by deconstructing and criticizing Prank Invasion's content in four reaction videos. Klein Decl., ¶ 8.A.ii; Exh. 117 (Klein Depo.), 71:12-74:21, 151:7-155:2, 185:23-186:17, 187:1-188:2, 188:14-189:11, 189:19-190:25, 191:10-192:13, 192:22-195:16, 195:25-198:9, 198:18-

8

201:13; 208:23-214:15; Exh. 92 (Kissing Pranks – h3h3 reaction video); Exh. 93 (PrankInvasion – h3h3 reaction video); Exh. 94 (It's Time to Stop); Exh. 95 (The Return of Prank Invasion).

**Defendants Approach To Reaction Videos**

26. Defendants' personal approach to reaction videos is to provide their personal insights on someone else's video through critical analysis, parody and commentary. Defendants find these videos through various websites, including YouTube and Reddit. Klein Decl., ¶ 2; Exh. 117 (Klein Depo.), 51:5-15, 27:8-17, 52:9-53:12; 125:25-126:4; 126:15-18.

27. Defendants do not select these videos for their reaction videos because they are inherently funny. Rather, Defendants select these videos because they have something critical to say about the video in a comedic manner. Klein Decl., ¶ 2; Exh. 117 (Klein Depo.), 29:6-30:2, 296:8-297:9.

28. Defendants understand fair use from their personal research but occasionally consult with an attorney. Exh. 117 (Klein Depo.), 129:2-20; 130:12-18, 133:20-134:2; 139:20-140:17, 184:12-20. Their established practice is to ensure that their commentary is substantial and transformative and that they use only what is necessary to make their point. During editing, Defendants are "mindful to basically cut out as much of the original video as possible" and "make sure that [they] were commenting or critiquing every segment that came before." *Id*. 136:9-137:12; 141:10-142:4. Defendants' fair use policy is nearly identical to the one set forth in the American University's Code of Best Practices in Fair Use for Online Videos. Exh. 118 (Code of Best Practices in Fair Use for Online Videos).

29. Some H3H3 videos employ stylistic edits, like editing in other clips, tinting, zooming and using graphic images. Ethan testified that on Defendants intend their commentary

9

and critique to be the heart of their claim to fair use and the use of stylistic edits for primarily texture and comedic effect. Klein Decl., ¶ 3; Exh. 117 (Klein Depo.), 203:1-205:6, 205:15-207:1.

30. Reaction videos posted on E&H differ in that they include Hila, are intended to be more lighthearted and rarely employ the stylistic edits. Hila is not a substitute for stylistic edits. Rather, E&H reaction videos are a different format offering Hila's perspective in addition to Ethan's, which brings an added level of commentary to the video. Klein Decl., ¶ 3; Exh. 117 (Klein Depo.), 124:12-125:20, 279:14-281:1.

**The Nature of Defendants' Critique**

31. *The Big, The BOLD, The Beautiful* ("Critique Video") is 13:47 minutes long and posted unto E&H on February 15, 2016. It uses 24 distinct clips from Plaintiff's Work, each ranging from 1 to 24 seconds with 75% being 12 seconds or less (i.e., 75%). The clips amount to 3:15 minutes of the 5:24 minute Work (i.e, 60%). Defendants' critique and commentary comprises 10:43 minutes of the 13:47 minute Critique Video (i.e., 75%). Klein Decl., ¶ 7; Exh. 1 (The Work); Exh. 2 (Critique Video).

32. The thesis of Defendants' critique of the Work has four over-arching themes: (1) put the Work in historical context; (2) expose the Work as misogynistic pseudo pornography; (3) critique the depiction of BG in the Work and Series; and (4) critique Plaintiff for creating the Work, BG and Series. Klein Decl., ¶ 8; Exh. 117 (Klein Depo.), 276:21-279:13.

33. Defendants commented on the Work by placing it in historical context. Klein Decl., ¶ 8.A; Exh. 1 (The Work); Exh. 2 (Critique Video); Exh. 117 (Klein Depo) 75:20-77:2, 217:21-218:6, 220:25-223:23, 233:23-235:24, 273:24-279:13.

34. Defendants critiqued the Work for being misogynistic and pornographic nature. Klein Decl., ¶ 8.B; Exh. 1 (The Work); Exh. 2 (Critique Video); Exh. 115 (Hoss Depo.) 70:22-

10

72:2; Exh. 117 (Klein Depo) 75:20-77:2, 220:25-223:23, 225:3-230:11, 231:15-233:22, 233:23-235:24, 235:25-236:25, 237:1-241:20, 242:21-251:19, 251:20-255:11, 258:4-260:1, 260:22-261:21, 261:22-265:19, 265:20-268:5, 268:6-270:21, 270:22-273:23, 273:24-279:13.

35. Defendants' critiqued the depiction of masculinity and portrayal of women in the Work and Series. Klein Decl., ¶ 8.C; Exh. 1 (The Work); Exh. 2 (Critique Video); Exh. 117 (Klein Depo) 75:20-77:2, 220:25-223:23, 225:3-230:11, 231:15-233:22, 235:25-236:25, 237:1-241:20, 242:21-251:19, 251:20-255:11, 258:4-260:1, 260:22-261:21, 261:22-265:19, 265:20-268:5, 268:6-270:21, 270:22-273:23, 273:24-279:13.

36. Defendants critique Plaintiff as the author of the Work, BG and Series. Klein Decl., ¶ 8.D; Exh. 1 (The Work); Exh. 2 (Critique Video); Exh. 117 (Klein Depo) 75:20-77:2, 219:7-220:17, 220:25-223:23, 225:3-230:11, 231:15-233:22, 233:23-235:24, 235:25-236:25, 237:1-241:20, 242:21-251:19, 251:20-255:11, 258:4-260:1, 260:22-261:21, 260:22-261:21, 261:22-265:19, 265:20-268:5, 268:6-270:21, 270:22-273:23, 273:24-279:13.

**Plaintiff's Response To The Critique Video**

37. Plaintiff saw the Critique Video and viewed it for infringement. The primary focus of his analysis was the amount used. Exh. 115 (Hoss Depo.) 113:2-21; 114:11-21; 115:23-116:3; 165:7-166:14. Plaintiff testified that Defendants did not comment, critique or ridicule his Work. *Id.* at 114:22-116:8; 121:5-122:17. He does testify that Defendants Critique Video was different then his Work because Defendants talked about his content. *Id.* at 124:6-124:19.

38. Plaintiff recognizes the following comments from individuals other than Defendants as forms of criticism: (1) his work is misogynistic (even though he believes that is factually false); (2) his work is cringe-worthy; and (3) his parkour is bad (but only in those exact words). Exh. 115 (Hoss Depo.), 216:25-217:3; 216:2-16; 128:3-129:10.

11

**Fair Use: First Factor**

39.    Defendants criticized Plaintiff's Work through humor, ridicule and mockery. Sometimes Defendants' critique was explicit; sometimes implied with the subtext coming from Defendants' word choice, tone, body movements and facial expressions. Exh. 2 (Critique Video); Exh. 117 (Klein Depo) 294:21-297:9, 261:22-265:19, 265:20-268:5, 273:24-279:13.

40.    Defendants did not use the Work because they thought it was was funny, rather their criticisms were directed at exposing the Work's plot, dialogue, characters, action, theme and message as misogynistic, pornographic and absurd. Exh. 117 (Klein Depo) 294:21-297:9, 231:15-233:22, 233:23-235:24, 235:25-236:25, 242:21-251:19, 251:20-255:11, 258:4-260:1, 260:22-261:21, 261:22-265:19, 265:20-268:5, 268:6-270:21, 270:22-273:23, 273:24-279:13, 75:20-77:2; Exh. 1 (The Work); Exh. 2 (Critique Video).

41.    Plaintiff states does not have any overt or covert sexual connotation the opening moment where he approaches the Woman and tells her to bend deeper. Exh. 115 (Hoss Depo.), 70:22-72:7; Exh. 1 (The Work).

42.    Defendants created numerous fictional narratives and parody audience reactions to critique the Work. Exh. 1 (The Work); Exh. 2 (Critique Video); Exh. 117 (Klein Depo) 237:1-241:20, 251:20-255:11, 258:4-260:1, 268:6-270:21, 270:22-273:23.

43.    Defendants believe that comedy and criticism coexist and are not mutually exclusive. They further believe that comedy can be one of the most insight and incisive forms of criticism. Defendants used comedy to provide their criticisms of Plaintiff's Work. . Klein Decl., ¶ 14; Exh. 117 (Klein Depo.), 246:10-17; 29:6-30:2, 240:7-241:9. [Commented [BR1]: Declaration]

12

44.     Plaintiff states does not have any overt or covert sexual connotation the opening moment where he approaches the Woman and tells her to bend deeper. Exh. 115 (Hoss Depo.), 70:22-72:7; Exh. 1 (The Work).

**Fair Use: Third Factor**

45.     At deposition, Ethan explained Defendants' thesis, how it manifested itself and why the clips served to establish and prove their thesis clearly. Exh. 117 (Klein Depo.), 219:7-220:17, 220:25-223:23, 225:3-230:11, 231:15-242:19; 242:21-255:11, 258:4-260:1, 260:22-279:13.

46.     The purpose of Defendants' critique was to prove how their criticisms applied to the entire Work and were not isolated occurrences taken out of context. Klein Decl., ¶ 8; Exh. 117 (Klein Depo.), 219:7-220:17, 220:25-223:23, 225:3-230:11, 231:15-242:19; 242:21-255:11, 258:4-260:1, 260:22-279:13.

**Fair Use: Fourth Factor**

47.     Revenue for YouTube videos is generated by advertisements placed on the video, which YouTube splits with the creator. Exh. 115 (Hoss Depo.), 153:2-9, 141:12-143:17; Exh. 117 (Klein Depo.), 89:8-90:6. The more traffic a video has the more revenue it generates, but revenue per view can be affected by various external factors like higher revenue per ad for the holiday season. Exh. 115 (Hoss Depo.), 141:12-143:17.

48.     In December 2015, views and revenue dropped off and flat lined. In the period immediately following February 15, 2016 – the date Defendants' uploaded the Critique Video, the Work experienced a spike in views and revenue. Exh. 110 (YouTube Analytics for Views of the Work); Exh. 120 (YouTube Analytics for Revenue of the Work).

13

49.     Plaintiff confirmed that the Critique Video created a spike in views and revenue at his deposition and that he has no evidence the Critique Video siphoned views or revenue for the Work. Exh. 115 (Hoss Depo.), 141:12-143:17, 147:10-149:20; Exh. 110 (YouTube Analytics for Views of the Work); Exh. 120 (YouTube Analytics for Revenue of the Work).

50.     After the mid-February 2016 spike, the Work experienced an increase in views and revenue for around a month. Exh. 110 (YouTube Analytics for Views of the Work); Exh. 120 (YouTube Analytics for Revenue of the Work).

51.     Plaintiff does not license his works to third-parties and refuses to join a YouTube Network because he believes the terms these YouTube. Exh. 115 (Hoss Depo.), 150:12-153:1

52.     YouTube Networks are also called Multi-Channel Networks or MCNs for short. Defendants have been members of several MCNs, including Collective Digital Studio (currently called Studio 71), Freedom! and Omnia Media. MCNs do not license the videos or ad space on the videos. MCNs are ad agencies that work as liaisons between content creators and YouTube. Ads on YouTube videos either come from the MCN or YouTube itself, not both. MCNs receive compensation through splitting the revenue from the ads with the YouTube content creator. MCNs also provide certain services, like sponsorship opportunities and management services for channel development. Klein Decl., ¶ 15; Exh. 115 (Hoss Depo.), 150:12-153:1; Exh. 117 (Klein Depo.), 120:11-121:19.

**Willful Infringement**

53.     Defendants did not make the *Censorship On YouTube* video to bully Prank Invasion, or its MCN Fullscreen, into submission for issuing a DMCA takedown notice of their reaction video entitled *Kissing Pranks – h3h3 reaction video*. The owner of the Prank Invasion channel, Chris, informed Defendants he had not issued the takedown notice. Rather, Defendants

14

made the video because they adamantly believed they engaged in fair use and to explain to their audience why their number one video at the time was removed by a wrongfully issued DMCA takedown notice. Klein Decl., ¶ ?; Exh. 117 (Klein Depo.), 151:17-153:13; 157:3-159:2; 161:14-167:12.

54. On April 2, 2016, Plaintiff sent Defendants an email demanding they takedown the Critique Video ("Email"). He claimed Defendants engaged in copyright infringement and digital piracy. He threatened to take legal action and seek damages, profits, attorneys' fees and costs if they failed to take down the video within 24 hours. The email rejected the possibility that the Critique Video was fair use. Exh. 121 (April 2, 2016 Email Correspondence); Exh. 115 (Hoss Depo) 165:7-166:14.

55. Plaintiff describes the Email as "friendly" and "kind request," and it was Defendants' refusal to comply forced him to hire counsel. Exh. 115 (Hoss Depo.), 171:1-172:2.

56. Defendants viewed the email as "belligerent" and a "threat. Klein Decl., ¶ 13; Exh. 117 (Klein Depo.), 289:16-293:22.

57. The same day Defendants responded to Plaintiff's Email and cc'ed their then attorney. They declined to takedown the video and requested Plaintiff to direct all future correspondence about pursuing his threat of legal action to counsel. Exh. 121 (April 2, 2016 Email Correspondence); Exh. 117 (Klein Depo.), 172:24-175:12.

58. Plaintiff hired counsel who sent a cease and desist letter and threatened Defendants with a lawsuit. He demanded they takedown the Critique Video, pay him $3,750 in fees and never speak of the incident. Defendants rejected Plaintiff's offer. Exh. 3 (*We're Being Sued* ("Lawsuit Video")); Exh. 122 (Plaintiff's First Settlement Offer); Exh. 115 (Hoss Depo.), 157:22-158:3; Klein Decl., ¶ 9.

15

59. During settlement negotiations, Defendants made the Critique Video publicly inaccessible but Plaintiff still filed a YouTube copyright strike against them. Exh. 115 (Hoss Depo.) 111:3-113:1; Exh. 3 (Lawsuit Video).

60. Plaintiff made a second settlement offer demanding Defendants create a video promoting him and his channel, which he would approve. Defendants would post the video on H3H3 for two months, which Defendants' rejected but countered by offering to take down the Critique Video and never speak of the incident or of Plaintiff again, which was rejected. Plaintiff testified he sought promotion because he wanted something of value from Defendants and settled for promotion because he was "generous." Klein Decl., ¶ 10; Exh. 122 (Plaintiff's Second Settlement Offer); Exh. 115 (Hoss Depo.) 159:10-160:21; Exh. 3 (Lawsuit Video).

61. Around April 26, 2016, Plaintiff issued a takedown notice on the Critique Video. Defendants filed a counter-notification asserting the Critique Video was fair use and that they had a good faith belief the Critique Video was taken down erroneously. Exh. 124 (Counter-Notification); Exh. 117 (Klein Depo.) 282:19-284:15; Klein Decl., ¶ 11.

62. On May 23, 2016 – after the Critique Video was taken down and Plaintiff initiated this lawsuit, Defendants uploaded *We're Being Sued* ("Lawsuit Video"), which is a 15:43 minute video summarizing the events leading up to this lawsuit and the lawsuit itself. The discussion is divided into four parts: (1) an introduction explaining the situation (44 seconds); (2) fair use (2:00 minutes); (2) settlement offers (4:14 minutes); and (3) the lawsuit itself (8:45 minutes). Klein Decl., ¶ 12; Exh. 3 (Lawsuit Video); Exh. 117 (Klein Depo.), 281:12-282:8, 300:2-16.

16

63. In the Lawsuit Video, Defendants explained the difficulty of litigating the fair use defense and their response to Plaintiff's settlement offers. Klein Decl., ¶ 12; Exh. 3 (Lawsuit Video); Exh. 117 (Klein Depo.), 281:12-282:8, 282:19-283:4, 300:2-16.

64. The majority of the Lawsuit Video discusses the lawsuit. Defendants discussed the allegations of Plaintiff's First Amended Complaint ("FAC") and how certain allegations were false. One example Defendants discuss was Plaintiff's allegation that the Work comprised the majority of the Critique Video when it did not. Defendants expressed their personal opinions on the lawsuit, their concern on the precedent capitulating to Plaintiff's settlement demands would create and, if they failed to stand up for fair use, other YouTubers would experience similar threats. Klein Decl., ¶ 12;Exh. 1 (The Work); Exh. 2 (Critique Video); Exh. 3 (Lawsuit Video); Exh. 125 (Plaintiff's First Amended Complaint); Exh. 117 (Klein Depo.) 281:12-282:8, 294:7-11.

65. Defendants did not upload the Lawsuit Video to bully Plaintiff into submission. Defendants' purpose was inform their audience and the YouTube community of the lawsuit. It was not Defendants' intent to incite or direct their fans and subscribers to post negative comments about Plaintiff and his videos or send him hate mail. Klein Decl., ¶ 17; Exh. 3 (Lawsuit Video).

66. Defendants applied their fair use policy when creating and editing the Critique Video. Defendants did not employ stylistic edits because the Critique Video was designed for the E&H format. The lack of stylistic edits did not affect their fair use analysis for the Critique Video, because Defendants' policy is to focus on whether their actual commentary and criticism is substantial and transformative. Defendants believed at the time they made the Critique Video, as they do now, that their commentary and criticism in the Critique Video was substantial and

17

transformative and that the clips they used of the Work was necessary to establish and prove their thesis on the Work. Under no circumstances was it their intent to test the boundaries of fair use with the Critique Video. Klein Decl., ¶¶ 2-3, 18; Exh. 117 (Klein Depo.), 51:5-15, 27:8-17, 29:6-30:2, 52:9-53:12, 124:12-125:20, 125:25-126:4, 126:15-18, 124:12-125:20, 136:9-137:12; 141:10-142:4, 203:1-205:6, 205:15-207:1, 279:14-281:1, 296:8-297:9.

> Commented [BR3]: Change cite

DATED: February 27, 2016                **FOX ROTHSCHILD LLP**

By: /s/ Rom Bar-Nissim
Caroline A. Morgan
Fox Rothschild LLP
100 Park Avenue, 15th Fl.
New York, NY 10017
Telephone: 212-878-7900
Fax: 212-692-0940

Jeffrey S. Kravitz (admitted *pro hac vice*)
Rom Bar-Nissim (admitted *pro hac vice*)
Fox Rothschild LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-1506
Telephone: 310-598-4150
Facsimile: 310-556-9828
Attorneys for Defendants