Caroline A. Morgan
Fox Rothschild LLP
100 Park Avenue, 15th Fl.
New York, NY 10017
Telephone: 212-878-7900

Jeffrey S. Kravitz (admitted *pro hac vice*)
Rom Bar-Nissim (admitted *pro hac vice*)
Fox Rothschild LLP
1800 Century Park East, Suite 300
Los Angeles, California 90067-1506
Telephone: 310-598-4150
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATT HOSSEINZADEH,<br><br>      *Plaintiff,*<br><br>– vs –<br><br>ETHAN KLEIN and HILA KLEIN,<br><br>      *Defendants.* | **Civ. 1:16-cv-3081 (KBF)**<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT ......................................................................................................... 2

    A. Plaintiff Fails To Refute That The Critique Video Is Transformative ................... 2

    B. Plaintiff Impliedly Concedes The Second Fair Use Factor Favors Defendants ................................................................................................... 6

    C. Plaintiff Fails To Refute The Third Fair Use Factor Favors Defendants ............... 6

    D. Plaintiff Fails To Refute The Fourth Fair Use Factor Favors Defendants ............. 7

    E. Plaintiff Fails To Show A Triable DMCA Misrepresentation Claim .................... 9

    F. Plaintiff Concedes He Has No Triable Defamation Claim ................................... 9

III. CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adjmi v. DLT Entm't, LTD*,
 97 F. Supp. 3d 512 (S.D.N.Y. 2015) ........................................................................... 3, 4, 6

*Blanch v. Koons*,
 467 F.3d 244 (2d Cir. 2006) ............................................................................................ 4

*Bourne Co. v. Twentieth Century Fox Film Corp.*,
 602 F. Supp. 2d 499 (S.D.N.Y 2009) .............................................................................. 5

*Burnett v. Twentieth Century Fox Film Corp.*,
 491 F. Supp. 2d 962 (C.D. Cal. 2007) ......................................................................... 3, 4

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ................................................................................................ *passim*

*Cariou v. Prince*,
 714 F.3d 694 (2d Cir. 2013) ............................................................................................ 4

*Celle v. Filipino Reporter Enterprises Inc.*,
 209 F.3d 163 (2d Cir. 2000) .......................................................................................... 10

*Elvis Presley Enter., Inc. v. Passport Video*,
 349 F.3d 622 (9th Cir. 2003) ....................................................................................... 2, 3

*Equals Three v. Jukin Media*
 138 F. Supp. 3d 1094 (C.D. Cal. 2015) ............................................................... 5, 7, 8, 9

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
 471 U.S. 539 (1985) ........................................................................................................ 4

*Hofheinz v. Discovery Commc'ns, Inc.*,
 No. 00 CIV. 3802 (HB), 2001 WL 1111970 (S.D.N.Y. Sept. 20, 2001) ......................... 3

*Leibovitz v. Paramount Pictures, Corp.*,
 137 F.3d 109 (2d Cir. 1998) ............................................................................................ 5

*Lucasfilm, Ltd. v. Media Market Grp., Ltd*,
 182 F. Supp. 2d 897 (C.D. Cal. 2000) ............................................................................. 4

*Mattel, Inc. v. Pitt*,
 229 F. Supp. 2d 315 (S.D.N.Y. 2002) ............................................................................. 4

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 729 (9th Cir. 2003) ............................................................................... 3, 4, 5

*Moll v. Telesector Res. Grp., Inc.*,
   760 F.3d 198 (2d Cir. 2014) ..................................................................................... 7, 8

*NXIVM v. Ross Institute*,
   364 F.3d 471 (2d Cir. 2004) ........................................................................................... 5

*Pall v. Roosevelt Union Free Sch. Dist.*,
   144 A.D.3d 1004 (N.Y. App. Div. 2016) ................................................................... 10

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ............................................................................................. 9

*Warner Bros. Entm't, Inc. v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................................... 6

## **Statutes**

17 U.S.C. § 107 ................................................................................................................. 1, 4, 5

17 U.S.C. § 512 ........................................................................................................................ 9

## I. INTRODUCTION

The Opposition ("Opposition" or "Opp.") of Plaintiff Matt Hosseinzadeh ("Plaintiff") makes clear no genuine issues exist for trial on his claims for (1) Copyright Infringement; (2) DMCA Misrepresentation; and (3) Defamation. Plaintiff's meritless and unfounded arguments only serve to clarify that no disputes of material fact exist and judgment should be entered for Defendants Ethan and Hila Klein (collectively, "Defendants") on all of Plaintiff's claims.

**Fair Use**: Plaintiff fails to present facts or law controverting the conclusion that Defendants' video, *The Big, The BOLD, The Beautiful* ("Critique Video") made fair use of his video, *Bold Guy vs. Parkour Girl* ("Work"). Rather, Plaintiff contends the Critique Video was not transformative (the first factor under 17 U.S.C. § 107) because, like the Work, it served an entertainment and comedic purpose. But this argument is "spurious" because many transformative works are entertaining and comedic. Moreover, while Plaintiff places great weight on the second fair use factor (the nature of the copyrighted work), he cannot escape the reality that this factor plays little to no role in the fair use inquiry – particularly when Defendants' use was transformative. As for the amount and substantiality of the use (third factor), Defendants' use of the Work was plainly reasonable – and the law does not require Defendants to use as "little as possible" as Plaintiff clearly desires. Finally, Plaintiff fails to demonstrate that the Critique Video resulted in market harm to the Work. Indeed, Plaintiff's own deposition testimony establishes that the Critique Video increased views and revenue for his Work, and he fails to grasp a fundamental tenet of copyright law that market substitution cannot be demonstrated by critical uses of a work.

**DMCA Misrepresentation**: Plaintiff's DMCA Misrepresentation claim is likewise unsupported by material facts but, instead, predicated on a fundamental lack of understanding of the law and the facts. While Plaintiff throws multiple arguments against the wall in the vain attempt

to see what sticks, none of his arguments demonstrate that Defendants lacked a good faith belief that their Critique Video was taken down erroneously when they filed their counter-notification.

**Defamation**: Finally, Plaintiff effectively concedes Defendants' video, *We're Being Sued* ("Lawsuit Video") is substantially true and the omission of his April 2, 2016 Email ("Email") was immaterial. Rather, what made Plaintiff appear litigious and resorting to lawyers when criticized was Defendants' "***non-actionable opinion***" that Plaintiff sued them because he did not appreciate their criticism and the evidence he proffers merely emphasizes this point.

It is time for Plaintiff's war on well-settled law and undisputed facts to end. Defendants respectfully request this Court to grant their Motion for Summary Judgment ("Motion") and enter judgment in favor of Defendants on all of Plaintiff's claims.

## II. ARGUMENT

### A. Plaintiff Fails To Refute That The Critique Video Is Transformative

Plaintiff misguidedly argues that *Elvis Presley Enter., Inc. v. Passport Video,* 349 F.3d 622 (9th Cir. 2003) stands for the proposition that the Critique Video is not transformative because the "inherent entertainment value" of the Work was comedic entertainment and the Critique Video also served the same purpose. But *Elvis* does not stand for such a sweeping proposition. Rather, the "inherent entertainment value" at issue in *Elvis* was the "***inherent entertainment value of Elvis' appearance*** on such shows as *The Steve Allen Show, The Ed Sullivan Show,* and *The 1968 Comeback Special.*" 349 F.3d at 628 (emphasis added).

Indeed, noted copyright scholar William F. Patry described Plaintiff's argument as "spurious" because "much comment and criticism [is] made in an entertainment context." WILLIAM F. PATRY, PATRY ON COPYRIGHT, § 10:20 (Sept. 2016 Update). Additionally, this argument was rejected twice by courts within this Circuit for inviting improper subjective judgments into the fair use analysis. Like here, the plaintiff in *Wade Williams Distribution, Inc. v. Am. Broad. Co.* sought

2

"to *alter the law of fair use* by drawing a distinction between 'commentary or criticism' and 'entertainment,' and cite[d *Elvis*] in support of this proposition." No. 00 CIV. 5002 (LMM), 2005 WL 774275, at *9 (S.D.N.Y. Apr. 5, 2005) (emphasis added). The court rejected this distinction. "The problem with such a rule lies in the difficulty of discerning what constitutes 'entertainment' and what does not. … Courts have consistently and prudently avoided subjective judgments in copyright cases, and this Court will not engage in one here." *Id.*; *see also Hofheinz v. Discovery Commc'ns, Inc.,* No. 00 CIV. 3802 (HB), 2001 WL 1111970, at *4 (S.D.N.Y. Sept. 20, 2001).

The Second Circuit is in accord with the Ninth on what constitutes a work's "inherent entertainment value." In *TCA Television, Corp. v. McCollum*, a play failed to transform a famous comedy routine when the use had "***no critical bearing on the substance or style of the original***" and the "***only purpose*** served by the extent of defendants' taking [was] ***identically comedic*** to that of the original authors [and copied] extensively for its ***original comedic effect.***" 839 F.3d at 168, 182-83 (2d Cir. 2016) (emphasis added).

Even Plaintiff admits that the Critique Video did not use the Work's inherent comedic value. He explicitly states: "Defendants' jokes in the [Critique Video] are ***far more pornographic, offensive, and disturbing***" and "serve[d] to ***supplant … the Work's intended humor***" (Opp., 1 (emphasis added)) and the Work was not intended to convey a message about pornography (D.St. 18). This, by definition, is transformative. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 (1994) ("degrading taunts, a bawdy demand for sex, and a sigh of relief from paternal responsibility" made work transformative); *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 729, 802 (9th Cir. 2003) (placing original in "sexually suggestive contexts" was transformative); *Adjmi v. DLT Entm't, LTD,* 97 F. Supp. 3d 512, 532 (S.D.N.Y. 2015) (finding transformative use when "unrelentingly vulgar" compared to the original); *Burnett v. Twentieth Century Fox Film*

3

*Corp.,* 491 F. Supp. 2d 962, 968 (C.D. Cal. 2007) ("crude joke" constituted fair use because it placed the original in an "awkward, ridiculous, crude, and absurd situation"); *Mattel, Inc. v. Pitt* ("*Pitt*"), 229 F. Supp. 2d 315, 322-23 (S.D.N.Y. 2002) (using "sadomasochistic costume and/or storylines" was transformative); *Lucasfilm, Ltd. v. Media Market Grp., Ltd,* 182 F. Supp. 2d 897, 901 (C.D. Cal. 2000) (pornographic version of Star Wars was fair use).[1]

Plaintiff fallaciously argues the "reasonably be perceived" standard should not be used to determine whether the Critique Video constitutes as criticism of his Work.[2] What Plaintiff fails to recognize that the "reasonably be perceived" standard – by its very terms – is intended to determine whether a work "***comment[s] on the original or criticiz[es] it, to some degree***." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583 (1994) (emphasis added). The parody/satire distinction is intended to aid that determination without having to resort to subjective value judgments. *See Blanch v. Koons*, 467 F.3d 244, 255 (2d Cir. 2006) ("We have applied *Campbell* in too many non-parody cases to require citation for the proposition that the broad principles of *Campbell* are not limited to cases involving parody. But the satire/parody distinction may nevertheless be relevant to the application of these principles."); *Cariou v. Prince,* 714 F.3d 694, 707 (2d Cir. 2013) ("[W]e do not analyze satire or parody differently from any other transformative use.").[3]

---

[1] Plaintiff is correct in one regard: Defendants did "supplant" the Work's inherent humor with their own, markedly different, humor. By definition, this is transformative. Plaintiff "may not like that transformation, but it is a transformation nonetheless." *Adjmi,* 97 F. Supp. 3d at 530. Moreover, whether the use is in "good taste or bad does not and should not matter to fair use." *Campbell*, 510 U.S. at 582*; Burnett*, 491 F. Supp. 2d 962, 968; *Mattel*, 353 F.3d at 801 (whether the use "is in bad taste is not relevant to whether it constitutes fair use."); *Pitt,* 229 F. Supp. 2d at 323 n. 2 ("Nor is the question of whether [defendant's works] are in good taste relevant.").

[2] Plaintiff advances the false assertion that all but one of the cases Defendants cited in their Motion involved news-reporting. Defendants cited a variety of cases involving commentary and criticism, including several parody cases to demonstrate how various critiques, particularly humorous ones, are transformative. *See* Motion, 13-19. Nor can he support his assertion that news-reporting holds a special status relative to other purposes set forth in 17 U.S.C. § 107. *See Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 561-63 (1985).

[3] "The distinction between parody and satire turns on the object of the 'comment' made by the

4

Plaintiff blatantly mischaracterizes *Equals Three v. Jukin Media* 138 F. Supp. 3d 1094 (C.D. Cal. 2015). First, he claims *Equals Three* is distinguishable because the works at issue were not creative. This is incorrect: the court found the works to be creative, which was "not particularly important" to the analysis. *Id.* at 1106. Second, Plaintiff argues that, in order for Defendants to avail themselves of *Equals Three*, each clip of the Work must be treated as a separate work because Equals Three's episodes used multiple videos. This argument is nonsensical because the court's analysis only focused on Equals Three's critique of the videos in question, not the other videos shown in the episode. *Id.* at 1104-05. Third, Plaintiff misguidedly reads *Equals Three* to treat stylistic edits as a necessary condition for reaction videos to constitute fair use. This is baseless, since *Equals Three* found certain episodes transformative solely due to the host's commentary. *Id.*

Plaintiff argues – without any legal citation – that Defendants did not engage in criticism because they identify as comedians, do not identify as "film" critics and have no education in "film" or "literary" criticism. Not only does 17 U.S.C. § 107 not mention a speaker's profession, education or background but case law does not support Plaintiff's ridiculous proposition either. *See e.g., Campbell*, 510 U.S. 569 (hip hop group capable of critiquing classic rock); *NXIVM v. Ross Institute,* 364 F.3d 471, 475 (2d Cir. 2004) ("self-styled experts" capable of critiquing company's seminar materials); *Mattel,* 353 F.3d at 786 ("self-taught photographer" capable of critiquing Barbie); *Leibovitz v. Paramount Pictures, Corp.,* 137 F.3d 109 (2d Cir. 1998) (movie studio capable of critiquing photo of famous actress); *Equals Three*, 139 F. Supp. 3d 1094 (YouTube channel capable of critiquing online videos).

---

allegedly infringing work." *Bourne Co. v. Twentieth Century Fox Film Corp.,* 602 F. Supp. 2d 499, 504-05 (S.D.N.Y 2009). A parody "***at least in part, comments on that author's works***," while satire has "***no critical bearing on the substance or style of the original***." *Campbell,* 510 U.S. at 580-81(emphasis added).

Stripped bare, Plaintiff's sole argument that the Critique Video is not transformative is the amount copied of the Work. But this is not the transformative use inquiry; it is the inquiry under the third fair use factor. *See Warner Bros. Entm't, Inc. v. RDR Books* ("*WB*"), 575 F. Supp. 2d 513, 544 (S.D.N.Y. 2008) (the impact of the amount copied on transformative use is discussed "more fully in analyzing the 'amount and substantiality' factor.").

### B. **Plaintiff Impliedly Concedes The Second Fair Use Factor Favors Defendants**

Plaintiff concedes the second fair use factor has limited application when the work is transformative. *See* Motion, 22; Opp. 11-12. Rather, his entire argument that the second factor weighs in his favor is premised on the legally and factually baseless assertion that the Critique Video is not transformative. As such, Plaintiff fails to show this factor weighs in his favor.

### C. **Plaintiff Fails To Refute The Third Fair Use Factor Favors Defendants**

It is well-established that the third fair use factor only requires that the amount and substantiality of the Work used by Defendants be reasonable in light of their critique. *See* Motion, 21-22. But Plaintiff deliberately misquotes *Campbell* for the proposition that the "necessary" standard governs. *Compare Campbell,* 510 U.S. at 586-87 ("the extent of permissible copying varies with the purpose and character of the use."); Opp., 12 ("'The extent of copying' is consistent with or more than necessary to further 'the purpose and character of the use'").

Plaintiff comically argues that Defendants could have made their critique with only 24 seconds of the Work (why stop there). This effectively concedes Defendants critiqued his Work and seeks to punish them for using too many examples of the Work to prove their critique. But Plaintiff forgets that transformative works "lie at the heart" of the fair use's "guarantee of ***breathing space*** within the confines of copyright." *Adjmi,* 97 F. Supp. 3d at 530 (emphasis added) (quoting *Campbell,* 510 U.S. at 579). And "'judges must not police criticism' … 'with a heavy hand' [and] hesita[te] to substitute [their] own judgment for that of an author[.]" *WB,* 575 F. Supp.

6

2d at 546 (quoting *Chicago Bd. Of Educ. v. Substance, Inc.,* 354 F.3d 624, 629 (7th Cir. 2003)).

Stripped bare, Plaintiff's sole argument that the amount Defendants used of the Work was unreasonable is based on gross mischaracterizations of Ethan's deposition testimony. Not only is this insufficient to manufacture a factual dispute, it is disingenuous.

### D. Plaintiff Fails To Refute The Fourth Fair Use Factor Favors Defendants

The Opposition fails to show that Plaintiff has suffered cognizable market harm under the Copyright Act. Instead, Plaintiff demonstrates complete willingness to contradict his deposition testimony in order to manufacture market harm. He contradicts his testimony regarding the impact Defendants' Critique Video had on the Work's direct views and revenue, now claiming he was referring to Defendants' Lawsuit Video. The law is clear that Plaintiff cannot manufacture issues of fact in opposition to a summary judgment motion by contradicting his own deposition testimony. *See Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014). Moreover, an ***actual reading*** of Plaintiff's deposition testimony makes clear he is discussing the bump in views and revenue from 2/4/16-3/6/16, not when the Lawsuit Video was released. D.St. 39.[4]

Plaintiff's argument that Defendants harmed his right to license derivative works is a mirage. The law is clear that Plaintiff cannot establish market harm from critical uses of his Work. *See Campbell,* 510 U.S. 591-92; Motion, 20-21. Further, the Supreme Court made it explicitly clear: "the only harm to derivatives … is the harm of ***market substitution***." *Id.* at 592. (emphasis added). Plaintiff rejects these well-established principles. He claims lost advertising revenues from third-parties who purportedly watched Defendants' Critique Video instead of his Work. R.St. 84-85; *See Equals Three,* 139 F. Supp. 3d at 1108 (rejecting identical assertion). This assertion directly

---

[4] All references to Defendants' Reply to Plaintiff's Rule 56.1 are referred to as "R.St." (ECF #95) All references to Defendants' Rule 56.1 Statement are referred to as "D.St." (ECF #83).

7

contradicts Plaintiff's deposition testimony that he has no knowledge of third-parties watching the Critique Video instead of his Work and should be disregarded. *See Moll,* 760 F.3d at 205. Further, this argument violates the legal principle that market substitution harm cannot be established by critical uses of Plaintiff's Work. *See Campbell,* 510 U.S. 591-92; Motion, 20-21.

Additionally, Plaintiff claims Defendants impeded his ability to license additional advertising space for his Work. But the evidence he submits only shows conjectural, speculative and theoretical market harms and not the loss of ***actual*** revenues or licensing opportunities. R.St. 86-88. Plaintiff points to brand and sponsorship deals that Defendants received through their YouTube Network. But these deals are for promoting products and services in an actual video and unavailable for pre-existing videos, like Plaintiff's Work. R.St. 88. Nor does Plaintiff explain how the Critique Video served as a market substitute because nothing was promoted in the Critique Video (with the notable exception of Plaintiff and his YouTube channel). Exh. 3 (Critique Video).

Further, Plaintiff claims Defendants impeded his ability to license elements of the Work, including his soundtrack. R.St. 87. But Defendants used the Work for a critical purpose and Plaintiff cannot show market substitution for critical works. *See Equals Three,* 139 F. Supp. 3d at 1107-08; Motion, 20-21. Once again, Plaintiff's assertions directly contradict his deposition testimony in which he stated he does not license his works to third-parties. R.St. 86. These repeated instances of Plaintiff contradicting his deposition testimony demonstrate Plaintiff is willing to say anything to manufacture market harm. *See Moll,* 760 F.3d at 205.

Plaintiff also claims Defendants impeded his ability to sell his music that appeared in the Work. R.St. 84, But he provides no explanation how Defendants' use of 24 clips from the Work – and not the isolated soundtrack – served as a market substitute for his music, particularly in light of Defendants' critical purpose. *See Campbell,* 510 U.S. at 592; Motion, 20-21.

There can be no dispute: Plaintiff has suffered no cognizable market harm under the Copyright Act. *See Salinger v. Colting,* 607 F.3d 68, 81 n.9 (2d Cir. 2010) (copyright protection is not meant "to coddle artistic vanity or to protect secrecy[.]").

### E. Plaintiff Fails To Show A Triable DMCA Misrepresentation Claim

Plaintiff seems hopelessly confused regarding the law and facts governing his 17 U.S.C. § 512(f) claim for misrepresentation. He argues that Defendants "perjured" themselves by claiming the Critique Video was noncommercial. Yet, 17 U.S.C. § 512(g)(3)(C) only requires that Defendants had "a good faith belief" that their video was erroneously taken down and Plaintiff has no evidence that Defendants did not hold this belief. D.St. 49. He argues Defendants willfully infringed by failing to include "stylistic edits" in the Critique Video. This is silly because stylistic edits are not essential to criticizing an online video or fair use. *See Equals Three,* 139 F. Supp. 3d at 1104-05. Plaintiff argues that Defendants neglected their fair use policy, but he offers no evidence that Defendants believed the Critique Video violated this policy. R.St. 93. Plaintiff desperately argues that Defendants intended to start a "media controversy" in retaliation to his takedown notice. Aside from the fact that this has nothing to do with the requirements of Section 512(f), it is false and seeks to blame Defendants for discussing a matter of public concern with their audience (*i.e.,* a lawsuit concerning fair use that would affect the YouTube community as a whole). Furthermore, the Lawsuit Video came *after* Defendants' counter-notification, *after* the Critique Video was taken down and *after* Plaintiff initiated this lawsuit. D.St. 49-50. Finally, if the Critique Video is found to be fair use (which it is), this claim fails under any scenario.

### F. Plaintiff Concedes He Has No Triable Defamation Claim

Plaintiff effectively concedes that the Lawsuit Video is substantially true. He cannot dispute he made the settlement demands, sued Defendants and filed a First Amended Complaint

9

with absurd allegations. Rather, he asks this Court to myopically focus on the alleged defamatory statement and not the Lawsuit Video as a whole. This is not the law. *See* Motion, 23-25; *Celle v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163, 177 (2d Cir. 2000) ("[C]ourts 'must give the disputed language a fair reading in the context of the **publication as a whole**.'") (emphasis in the original) (quoting *Armstrong v. Simon & Schuster, Inc.,* 649 N.E.2d 825, 829 (N.Y. 1995)).

Nor does Plaintiff dispute that the omission of Plaintiff's Email from the Lawsuit Video was immaterial and the Email threated Defendants with a lawsuit for monetary damages if they failed to takedown the Critique Video. While he complains that the Lawsuit Video made him seem like a "trigger-happy litigant who immediately activates his lawyers when he is criticized," he concedes that this stemmed from Defendants' "**non-actionable opinion**" that Plaintiff sued them because he did not appreciate their criticism. This demonstrates it was Defendants' "**non-actionable opinion**" that affected his reputation, not the omission of his Email. *See Pall v. Roosevelt Union Free Sch. Dist.*, 144 A.D.3d 1004, 1005 (N.Y. App. Div. 2016) (holding that the "defamatory statement of fact" must "caus[e] special harm.") (quoting *Rodriguez v. Daily News, L.P.*, 142 A.D.3d 1062, 1063 (N.Y. App. Div. 2016)). The evidence he offers merely reinforces the fact the public agreed with Defendants' "**non-actionable opinion**" and Plaintiff's Email threatening to sue them for monetary damages would only aggravate that opinion. Stripped bare, this entire claim stems from Plaintiff's delusional belief that he is not responsible for this lawsuit – but rather Defendants forced him to sue by refusing to comply with his Email.

## III. CONCLUSION

Plaintiff must realize that well-settled law and undisputed facts are not the women in his videos; they will not change because he is persistent in the face of their hostility. For the reasons stated above, no genuine issues of material fact exist for trial. Defendants respectfully request this Court to grant their Motion and enter judgment for Defendants on all of Plaintiff's claims.

10

DATED:  March 6, 2017                     **FOX ROTHSCHILD LLP**

                                                By: <u>/s/ *Rom Bar-Nissim*</u>
                                                   Caroline A. Morgan
                                                   Fox Rothschild LLP
                                                   100 Park Avenue, 15th Fl.
                                                   New York, NY 10017
                                                   Telephone: 212-878-7900
                                                   Fax: 212-692-0940

                                                   Jeffrey S. Kravitz (admitted *pro hac vice*)
                                                   Rom Bar-Nissim (admitted *pro hac vice*)
                                                   Fox Rothschild LLP
                                                   1800 Century Park East, Suite 300
                                                   Los Angeles, CA 90067-1506
                                                   Telephone: 310-598-4150
                                                   Facsimile: 310-556-9828
                                                   Attorneys for Defendants