UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

MATT HOSSEINZADEH,

                      Plaintiff,

          -v-

ETHAN KLEIN and HILA KLEIN,

                    Defendants.

------------------------------------------------------------- X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: August 23, 2017 |

16-cv-3081 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

This action principally concerns whether critical commentary on a creative video posted on YouTube constitutes copyright infringement.  Matt Hosseinzadeh ("plaintiff") filed this action in response to a video (the "Klein video") created by Ethan and Hila Klein ("defendants") and in which they comment on and criticize plaintiff's copyrighted video (the "Hoss video").  (ECF No. 1.)  The Kleins' criticism and commentary is interwoven with clips from the Hoss video.  The operative complaint alleges that defendants infringed plaintiff's copyrights, made misrepresentations in a counter-takedown notice in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 512(g)(3), and defamed plaintiff.  (ECF No. 26.)

Before the Court are dueling motions for summary judgment.  (ECF Nos. 82, 86.)  The key evidence in the record consists of the Klein and Hoss videos themselves.  Any review of the Klein video leaves no doubt that it constitutes

critical commentary of the Hoss video; there is also no doubt that the Klein video is decidedly not a market substitute for the Hoss video.  For these and the other reasons set forth below, defendants' use of clips from the Hoss video constitutes fair use as a matter of law.  Further, it is clear that defendants' comments regarding the lawsuit are either non-actionable opinions or substantially true as a matter of law.  For these and the other reasons set forth below, plaintiff's defamation claim fails.  Defendants' motion for summary judgment is therefore GRANTED, and plaintiff's motion is DENIED.

## I.    BACKGROUND

The following facts are taken from the parties' submissions under Rule 56.1 and are undisputed unless otherwise noted.

Plaintiff is a filmmaker who posts original video content on YouTube.  (Plaintiff's Rule 56.1 Counterstatement of Undisputed Material Fact ("Pl. 56.1"), ECF No. 101 ¶ 2.)  He has written and performed in a collection of short video skits portraying encounters between a fictional character known as "Bold Guy," played by plaintiff, and various women whom Bold Guy meets and pursues.  (See id. ¶ 3.)  The allegedly infringed work at issue here is a video skit titled "Bold Guy vs. Parkour Girl," (the "Hoss video") in which the Bold Guy flirts with a woman and chases her through various sequences.  (ECF No. 84-1 Ex. 1.)

Defendants also disseminate their work through YouTube.  (ECF No. 101 ¶ 19.)  On February 15, 2016, defendants posted a video titled "The Big, The BOLD, The Beautiful" (the "Klein video") on YouTube.  (ECF No. 84-1 Ex. 2.)  In this

video, defendants comment on and criticize the Hoss video, playing portions of it in the process.  (ECF No. 101 ¶ 31.)  The Klein video opens with commentary and discussion between Ethan and Hila Klein, followed by segments of the Hoss video which they play, stop, and continue to comment on and criticize.[1]  The Klein video, which is almost fourteen minutes long, intersperses relatively short segments of the Hoss video with long segments of the Kleins' commentary, ultimately using three minutes and fifteen seconds of the five minute, twenty-four second long Hoss video.  (Id.)  The Klein video is harshly critical of the Hoss video, and includes mockery of plaintiff's performance and what the defendants consider unrealistic dialog and plotlines.  (Id.; ECF No. 84-1 Ex. 2.)  In addition, defendants' commentary refers to the Hoss video as quasi-pornographic and reminiscent of a "Cringetube" genre of YouTube video known for "cringe"-worthy sexual content.  (ECF No. 84-1 Ex. 2.)  As critical as it is, the Klein video is roughly equivalent to the kind of commentary and criticism of a creative work that might occur in a film studies class.

On April 23, 2016, plaintiff submitted a DMCA takedown notification to YouTube regarding the Klein video; YouTube took down the Klein video the same day.  Defendants submitted a DMCA counter notification challenging the takedown

---

[1] The Klein video is arguably part of a large genre of YouTube videos commonly known as "reaction videos." Videos within this genre vary widely in terms of purpose, structure, and the extent to which they rely on potentially copyrighted material.  Some reaction videos, like the Klein video, intersperse short segments of another's work with criticism and commentary, while others are more akin to a group viewing session without commentary. Accordingly, the Court is not ruling here that all "reaction videos" constitute fair use.

3

on the basis that the Klein video was, <u>inter alia</u>, fair use and noncommercial.
Three days later, this action was filed.

On May 24, 2016, defendants posted a new video on YouTube titled "We're
Being Sued," (the "Lawsuit video"), which discussed this action and criticized
plaintiff for filing it.  (ECF No. 84-1 Ex. 3.)  In response, plaintiff amended his
complaint to include a defamation claim.  Following a period of discovery, both
parties have now moved for summary judgment.

II.    LEGAL PRINCIPLES

    a.  <u>Summary judgment</u>

Summary judgment may be granted when a movant shows, based on
admissible evidence in the record, "that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of
a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).
In reviewing a motion for summary judgment, the Court construes all evidence in
the light most favorable to the nonmoving party, and draws all inferences and
resolves all ambiguities in its favor.  <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d
Cir. 2010).  The Court's role is to determine whether there are any triable issues of
material fact, not to weigh the evidence or resolve any factual disputes.  <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

b.  Fair use

Fair use is an affirmative defense to copyright infringement.  It "is a judicially created doctrine . . . first explicitly recognized in statute in the Copyright Act of 1976."  On Davis v. Gap, Inc., 246 F.3d 152, 173 (2d Cir. 2001).  In determining whether "the use of a work in any particular case" is fair use, courts must consider non-exhaustive factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  No single factor is categorically determinative in this "open-ended and context-sensitive inquiry."  Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006).  The task of determining fair use "is not to be simplified with bright-line rules, for the statute . . . calls for case-by-case analysis."  Id. (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994)).  The Second Circuit has held that when the material facts in the record are undisputed, the fair use factors are properly considered as a matter of law and therefore may be decided on motion for summary judgment.  See Maxtone-Graham v. Burtchaell, 803 F.2d 1253, 1257-59 (2d Cir. 1986); see also Blanch, 467 F.3d at 250 ("Although fair use is a mixed question of law and fact, this court has on a number of occasions resolved fair use determinations at the summary judgment stage where . . . there are no genuine

5

issues of material fact.") (internal quotations and alterations omitted); <u>Swatch Grp.</u>
<u>Mgmt. Servs. Ltd. v. Bloomberg L.P.</u>, 756 F.3d 73, 93 (2d Cir. 2014) (affirming
district court's <u>sua sponte</u> grant of summary judgment for defendants on basis of
fair use).

      Although no factor is independently determinative, "[t]he heart of the fair use
inquiry" is the first factor—whether the use is "transformative" by "add[ing]
something new, with a further purpose or different character[.]"  <u>On Davis</u>, 246 F.3d
at 174 (quoting <u>Campbell</u>, 510 U.S. at 579).  "The central purpose of this
investigation is to see . . . whether the new work merely supersedes the objects of
the original creation, or instead adds something new, with a further purpose or
different character, altering the first with new expression, meaning, or message."
<u>Campbell</u>, 510 U.S. at 579 (internal quotations and alterations omitted); <u>Authors</u>
<u>Guild, Inc. v. HathiTrust</u>, 755 F.3d 87, 96 (2d Cir. 2014) ("A use is transformative if
it does something more than repackage or republish the original copyrighted
work.").  "In other words, the would-be fair user of another's work must have
justification for the taking."  <u>Authors Guild v. Google, Inc.</u>, 804 F.3d 202, 214-15 (2d
Cir. 2015), <u>cert. denied sub nom.</u> <u>The Authors Guild v. Google, Inc.</u>, 136 S. Ct. 1658,
194 L. Ed. 2d 800 (2016).

      It is well-established that "[a]mong the best recognized justifications for
copying from another's work is to provide comment on it or criticism of it."  <u>Id.</u>
Indeed, the Second Circuit has held "there is a strong presumption that factor one
favors the defendant if the allegedly infringing work fits the description of uses

described in section 107," including "criticism" and "comment."  Wright v. Warner

Books, Inc., 953 F.2d 731, 736 (2d Cir. 1991); see also TCA Television Corp. v.

McCollum, 839 F.3d 168, 179 (2d Cir. 2016) ("[T]he uses identified by Congress in

the preamble to § 107—criticism, comment, news reporting, teaching, scholarship,

and research—might be deemed 'most appropriate' for a purpose or character

finding indicative of fair use."); NXIVM Corp. v. Ross Inst., 364 F.3d 471, 477 (2d

Cir. 2004) ("Where the defendants' use is for the purposes of criticism [or] comment .

. . factor one will normally tilt in the defendants' favor.") (internal quotation

omitted).  Accordingly, courts have regularly found fair use after holding that the

purpose or character of an allegedly infringing work was criticism and/or comment.

See, e.g., NXIVM Corp., 364 F.3d at 482 (affirming district court denial of

preliminary injunction after finding that defendants' allegedly infringing writings

were "undoubtedly transformative secondary uses intended as a form of criticism");

Louis Vuitton Malletier, S.A. v. My Other Bag, Inc., 156 F. Supp. 3d 425, 444-45

(S.D.N.Y.), aff'd, 674 F. App'x 16 (2d Cir. 2016) (holding defendant's line of tote bags

made fair use of plaintiff's copyrights in part because "[p]arody, like other forms of

comment or criticism, has an obvious claim to transformative value") (internal

quotations omitted); Adjmi v. DLT Entm't Ltd., 97 F. Supp. 3d 512, 531 (S.D.N.Y.

2015) (holding the play "3C" makes fair use of the television series "Three's

Company" in part because the play "criticizes and comments upon Three's Company

by reimagining a familiar setting in a darker, exceedingly vulgar manner.").

The second factor, which is "rarely found to be determinative," "calls for recognition that some works are closer to the closer to the core of intended copyright protection that others;" a work that "is in the nature of an artistic creation . . . falls close" to that core. On Davis, 246 F.3d at 174 (quoting Campbell, 510 U.S. at 586.). Thus, a determination that an allegedly infringed work is fictional or creative weighs against a finding of fair use.

The third factor is a consideration of the "amount and substantiality of the portion [of the copyrighted work] used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This requires courts to "consider not only 'the quantity of the materials used' but also 'their quality and importance.'" McCollum, 839 F.3d at 185 (quoting Campbell, 510 U.S. at 587). "[T]he extent of permissible copying varies with the purpose and character of the use." Cariou v. Prince, 714 F.3d 694, 710 (2d Cir. 2013) (quoting Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 613 (2d Cir. 2006); see also Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 565 (1985).

Finally, the fourth factor "focus[es] on whether the secondary use usurps demand for the protected work by serving as a market substitute[.]" McCollum, 839 F.3d at 186 (citing Campbell, 510 U.S. at 592). This factor is concerned with a secondary use that, "by offering a substitute for the original, usurp[s] a market that properly belongs to the copyright-holder. Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 110 (2d Cir. 1998) (emphasis added). "In weighing this factor, a court properly looks to 'not only the extent of market harm caused by the particular

actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original.'" McCollum, 839 F.3d at 186 (quoting Campbell, 510 U.S. at 590).

The question is whether the allegedly infringing work serves as a "market substitute" for the allegedly infringed work, not merely whether the market for the allegedly infringed work was harmed. Campbell, 510 U.S. at 592 (noting that critical parodies may legitimately aim at harming the market for a copyrighted work, and that "a lethal parody, like a scathing theater review, kills demand for the original [but] does not produce a harm cognizable under the Copyright Act."); see also On Davis, 246 F.3d at 175 ("[I]f the secondary work harms the market for the original through criticism or parody, rather than by offering a market substitute for the original that supersedes it, it does not produce a harm cognizable under the Copyright Act."); Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 24 (1st Cir. 2000) ("[T]o the extent that the copying damages a work's marketability by parodying it or criticizing it, the fair use finding is unaffected.).  Accordingly, "the role of the courts is to distinguish between biting criticism that merely suppresses demand and copyright infringement, which usurps it." Campbell, 510 U.S. at 592 (internal quotations and alterations omitted).  If the allegedly infringing work is not properly considered a "market substitute" for the allegedly infringed work, the fourth factor weighs in favor of the defendant. See, e.g., Google, Inc., 804 F.3d at 223-24 (holding that the "snippet view" of books digitized as part of the Google

Books project did not constitute an effectively competing substitute to the original works); NXIVM Corp., 364 F.3d at 482 ("[A]s a general matter, criticisms of a seminar or organization cannot substitute for the seminar or organization itself or hijack its market.").

   c. DMCA Misrepresentation

The Digital Millennium Copyright Act ("DMCA") governs the means by which copyright holders can notify online service providers that their sites host or provide access to allegedly infringing material. The DMCA provides that such notices, commonly referred to as "takedown notices," must include, inter alia, a "statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner[.]"  17 U.S.C. § 512(c)(3)(A)(v) (emphasis added). The DMCA further provides a mechanism, commonly referred to as a "counter notification," through which creators of allegedly infringing work can effectively appeal a service provider's decision to remove or otherwise disable access to their work. Similar to a takedown notice, a counter notification must include, inter alia, "a statement under penalty of perjury that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled." 17 U.S.C. § 512(g)(3)(C) (emphasis added). Relevant to the current action, the DMCA prohibits "knowingly materially misrepresent[ing] . . . (1) that material or activity is

infringing, or (2) that material or activity was removed or disabled by mistake or misidentification[.]"  17 U.S.C. § 512(f).

The Ninth Circuit has held that, in submitting a takedown notification, "a copyright holder need only form a <u>subjective</u> good faith belief that a use is not authorized."  <u>Lenz v. Universal Music Corp.</u>, 815 F.3d 1145, 1153 (9th Cir. 2015), <u>cert. denied</u>, 137 S. Ct. 416 (2016), and <u>cert. denied</u>, 137 S. Ct. 2263 (2017) (citing <u>Rossi v. Motion Picture Ass'n of Am. Inc.</u>, 391 F.3d 1000, 1004 (9th Cir. 2004) (emphasis added).  In other words, a copyright holder is not liable for misrepresentation under the DMCA if they subjectively believe the identified material infringes their copyright, even if that belief is ultimately mistaken.  <u>See</u> <u>id.</u> It is clear to this Court that the same subjective standard should apply to the "good faith belief" requirement for counter notifications.  If the same standard did not apply, creators of allegedly infringing work would face a disparate and inequitable burden in appealing an online service provider's decision to remove or disable access to their work.  Given the fact that the statutory requirements for takedown notices and counter notifications are substantially the same, the DMCA plainly does not envision such a scheme.  <u>Cf.</u> <u>Rossi</u>, 391 F.3d at 1005 ("Juxtaposing the 'good faith' proviso of the DMCA with the 'knowing misrepresentation' provision of that same statute reveals an apparent statutory structure that predicated the imposition of liability upon copyright owners only for knowing misrepresentations regarding allegedly infringing websites.")

d.  Defamation

Because falsity is an element of defamation under New York law, truth is an absolute defense to a defamation claim.  See Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 242-44 (2d Cir. 2017); see also Tolbert v. Smith, 790 F.3d 427, 440 (2d Cir. 2015) ("A slanderous statement, by definition, must be false."); Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986) ("Under New York law, . . . truth is an absolute, unqualified defense to a civil defamation action.") (internal quotation omitted).  It is well-established that "a statement need not be completely true, but can be substantially true, as when the overall 'gist or substance of the challenged statement' is true."  Tolbert, 790 F.3d at 440 (quoting Chau v. Lewis, 771 F.3d 118, 129 (2d Cir. 2014)) (emphasis in original); see also Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516 (1991) ("The common law of . . . overlooks minor inaccuracies and concentrates upon substantial truth.") (internal citation omitted).

"A statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced."  Tannerite Sports, LLC, 864 F.3d at 243-44 (quoting Biro v. Conde Nast, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012)) (internal quotation marks omitted); see also Cafferty v. S. Tier Pub. Co., 226 N.E. 76, 78 (N.Y. 1919) ("When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done.).  "When a court interprets a publication in an action for defamation,

12

the entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." <u>Tannerite Sports, LLC</u>, 864 F.3d at 243 (internal quotation and alteration omitted).

Along similar lines, statements of pure opinion, as opposed to statements of fact, are not actionable as defamation under New York state law. <u>See</u> <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 402 (2d Cir. 2006) ("New York law absolutely protects statements of pure opinion, such that they can never be defamatory.") (internal quotation omitted). That said, when an opinion "impl[ies] a basis in undisclosed facts, or facts known only to the author," it may be actionable as a "mixed opinion." <u>Chau</u>, 771 F.3d at 129 (citation omitted); <u>see also</u> <u>Enigma Software Grp. USA, LLC v. Bleeping Computer LLC</u>, 194 F. Supp. 3d 263, 281 ("What differentiates an actionable mixed opinion from a privileged, pure opinion is the implication that the speaker knows certain facts, unknown to the audience, which support the speaker's opinion[.]") (quotation and alterations omitted). "[T]he dispositive inquiry . . . [is] whether the challenged statement can reasonably be construed to be stating or implying facts about the defamation plaintiff." <u>Flamm v. Am. Ass'n of Univ. Women</u>, 201 F.3d 144, 148 (2d Cir. 2000).

III.   DISCUSSION

a.   <u>Claim I - Copyright Infringement</u>

The Court's review of the Klein and Hoss videos makes it clear that Claim I, in which plaintiff alleges that defendants infringed plaintiff's copyrights, must be decided in defendants' favor. The first fair use factor—and the most important—

weighs heavily in defendants' favor.  As discussed above, "criticism" and "comment" are classic examples of fair use.  17 U.S.C. § 107; see also Google, Inc., 804 F.3d at 214-15.  The Klein video is quintessential criticism and comment; illustrative examples include[2]:

- Ethan Klein remarks that the Bold Guy "comes from . . . an older day of YouTube," and refers to plaintiff as "the king of cringetube."

- Ethan Klein mocks the video's opening title sequence and mimics the movement of the words by performing a dance in his seat.

- After watching what they apparently consider a lewd and unrealistic opening sequence, defendants point out that plaintiff wrote the script, and Ethan Klein remarks "this is how Matt Hoss sees the world and it says more about him than it does about anyone else."

- Defendants sarcastically compliment the "sleeveless hoodie" that Bold Guy wears, calling it "one of the classiest . . . pieces of clothing you can own."

- Defendants mock the fact that plaintiff included a line in the script complimenting his own "strong shoulders."

- Hila Klein expresses irritation with the female character, stating "the female characters [in Bold Guy videos] are always so annoying, and he writes them like that."

- Defendants engage in extended criticism and mockery of the female character's statement "catch me and I'll let you do whatever you want to me."

---

[2] Although the Klein video is not timestamped, these illustrative examples occur chronologically.

- Defendants mock plaintiff's parkour ability, sarcastically stating that plaintiff "thinks he's . . . a parkour expert."

- Ethan Klein criticizes a scene in which Bold Guy rapidly moves from one location to another, stating that the scene "broke [the] realism" of the video.

Irrespective of whether one finds it necessary, accurate, or well-executed, the Klein video is nonetheless criticism and commentary on the Hoss video. Thus, like NXIVM Corp., Louis Vuitton, and Adjmi, this first factor weighs in defendants' favor.

The second factor examines the nature of the allegedly infringed work. Defendants argue that the Hoss video and plaintiff's "Bold Guy" video skits are factual rather than creative in nature because plaintiff has said he draws inspiration for the character form his own experiences and personality. The Court disagrees. Plaintiff's videos, including the Hoss video, are entirely scripted and fictional, regardless of whether plaintiff draws on himself for the Bold Guy character. If creative works were deemed nonfiction whenever an author relies on his or her own experience, the fiction genre would be defined almost entirely out of existence. Since the Hoss video is a creative work, the second factor weighs against a finding of fair use. On Davis, 246 F.3d at 174 (citing Campbell, 510 U.S. at 586.).

The third factor examines the amount and substantiality of the portion of the copyrighted work used. Defendants argue that the third factor weighs in their favor because plaintiff's video constitutes only a small proportion of the content of defendants' video. Defendants' analysis gets the math backwards. The third fair

use factor considers what proportion of the underline(copyrighted work) the allegedly infringing work uses, and then how well tailored that use was to the allegedly infringing work's proper purpose—no matter how large or long the allegedly infringing work is. Here, defendants use a number of short segments of plaintiff's work, interspersing their commentary and critique along the way. It is certainly true that when one adds up all of the segments used, the total amounts to three minutes and fifteen seconds of a five minute and twenty-four second video. The law is clear, however, that quantity alone is not determinative.

It is evident that to comment on and critique a work, clips of the original may be used. Campbell, 510 U.S. at 588 ("[P]arody must be able to 'conjure up' at least enough of that original to make the object of its critical wit recognizable. . . . Copying does not become excessive in relation to parodic purpose merely because the portion taken was the original's heart."); Abilene Music, Inc. v. Sony Music Entm't, Inc., 320 F. Supp. 2d 84, 89 (S.D.N.Y. 2003) ("[A] parody must take recognizable material from the original in order to convey its message[.]"). Without using actual clips, the commentary and critique here would lose context and utility. Here, the "extent" and "quality and importance" of the video clips used by defendants were reasonable to accomplish the transformative purpose of critical commentary. See McCollum, 839 F.3d at 185. This factor is therefore neutral—a great deal of plaintiff's work was copied, but such copying was plainly necessary to the commentary and critique.

The fourth factor—the commercial impact the allegedly infringing work has or had on demand for the Hoss video—also weighs in favor of defendants.  The purpose of the fourth factor is to determine to what degree an allegedly infringing work "usurps" demand for the copyrighted work, thereby resulting in a loss for the infringee or unjust enrichment for the infringer.  See id.; see also Campbell, 510 U.S. at 592 (stating "the role of the courts is to distinguish between biting criticism that merely suppresses demand and copyright infringement, which usurps it.") (internal quotations and alterations omitted); NXIVM Corp., 364 F.3d at 481-82 ("In considering the fourth factor, our concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work.").  Here, it is clear to the Court that the Klein video does not serve as a market substitute for the Hoss video; anyone seeking to enjoy "Bold Guy v. Parkour Girl" on its own will have a very different experience watching the Klein video, which responds to and transforms the Hoss video from a skit into fodder for caustic, moment-by-moment commentary and mockery.  Because the Klein video does not "offer[] a substitute for the original," it does not (and indeed, cannot) "usurp a market that properly belongs to the copyright-holder."  Infinity Broad. Corp., 150 F.3d at 110.  The fourth factor thus weighs in favor of a determination of fair use.

   b.   Claim II  - DMCA Misrepresentation

The Court has held that the Klein video constitutes fair use, and further that the Klein video does not infringe plaintiff's copyrights.  Accordingly, it is clear to the

Court that Claim II, which alleges that defendants made misrepresentations in their DMCA counter notification, must also be dismissed.  It is self-evident that a statement cannot be a "misrepresentation" for purposes of 17 U.S.C. § 512(f) if it is factually accurate.

But even if this Court held the Klein video is not fair use, the Court would still dismiss Claim II because defendants clearly had a subjective "good faith belief" that their video did not infringe plaintiff's copyrights.  Cf. Lenz, 815 F.3d at 1153. It is undisputed that defendants understand the concept of fair use and have an established practice for ensuring their videos make fair use of copyrighted material. (ECF No. 101 ¶ 28.)  It is also undisputed that defendants filed a counter notification on August 26, 2016 alleging that the Klein video constituted fair use. (ECF No. 101 ¶ 49.)  This undisputed evidence clearly establishes the subjective "good faith belief" required under 17 U.S.C. § 512(g)(3)(C).  Plaintiff has failed to proffer any evidence that suggests defendants lacked a subjective "good faith belief," and therefore has failed to create a triable issue.  Accordingly, Claim II must additionally be dismissed for that reason.[3]

    c.    <u>Claim III – Defamation</u>

Based on this Court's review of the Lawsuit video, it is clear that Claim III, in which plaintiff alleges that defendants defamed the plaintiff, must be dismissed. First, as plaintiff has acknowledged, the Lawsuit video is replete with "non-

---

[3] In its order dated January 18, 2017, the Court characterized Claim II as "exceptionally weak."  (ECF No. 79 p. 3, n. 1.)  Plaintiff has done nothing to strengthen his claim in the time since that order was issued.

actionable opinion[s]."  (ECF No. 99.); <u>Kirch</u>, 449 F.3d at 402 ("New York law
absolutely protects statements of pure opinion, such that they can never be
defamatory.") (internal quotation omitted).  For example, Ethan Klein's statement
"I think that the heart and soul of this is . . . he doesn't like that we made fun of
him, and so he's suing us" is a quintessential statement of pure opinion.  Nothing
about Ethan Klein's statement suggests that his opinion is based on any non-public
facts about plaintiff, therefore the statement is clearly not actionable as a "mixed
opinion."  <u>Chau</u>, 771 F.3d at 129.

   The only other allegedly defamatory statement explicitly identified by
plaintiff is Ethan Klein's assertion that "several months passed [and] nothing
happen[ed]" prior to plaintiff's first settlement offer and threat of litigation.  But
because that statement is "substantially true" as a matter of New York law, it is
non-actionable.  As previously noted, a statement is "substantially true" "if the
statement would not have a different effect on the mind of the reader from that
which the pleaded truth would have produced."  <u>Tannerite Sports, LLC</u>, 864 F.3d at
243-44 (quotation omitted).  Here, plaintiff argues that Ethan Klein's failure to
mention that plaintiff sent a warning e-mail on August 2, 2016 makes Ethan Klein's
statement that "nothing happen[ed]" false and defamatory.  (ECF No. 99.)  Plaintiff
further argues that Ethan Klein's omission is defamatory because it paints plaintiff
as "a trigger-happy litigant who immediately activates his lawyers when he is
criticized."  (<u>Id.</u>)

Plaintiff is mistaken for at least two reasons.  First, viewing the Lawsuit video as a whole, the clear import of Ethan Klein's statement that "nothing happen[ed]" is that defendants were surprised and disappointed by plaintiff's decision to file a lawsuit months after the Klein video was first posted on YouTube.  See Tannerite Sports, LLC, 864 F.3d at 243 ("When a court interprets a publication in an action for defamation, the entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader.") (internal quotation and alteration omitted).  Plaintiff's objection to the word "nothing" is hyper-literal and based on a strained and unsupported interpretation of the Lawsuit video.  Given the Lawsuit video is all about plaintiff's decision to file the present action, Ethan Klein's statement that "nothing happen[ed]" could easily refer to the fact that no action was filed in the intervening months, not that the parties had no communication.

Second, mention of the warning e-mail would not have produced a "different effect on the mind of the reader" from what defendants actually said.  Tannerite Sports, LLC, 864 F.3d at 243-44 (quotation omitted).  If, as plaintiff has alleged, the ordinary viewer would see plaintiff as a "trigger-happy litigant" after watching the Lawsuit video, it is exceptionally unlikely that knowledge of the April 2, 2016 e-mail, in which plaintiff explicitly threatened "costly" legal action if defendants did not comply with his demands within twenty-four hours, would change that perception.  In other words, the "pleaded truth" would do absolutely nothing to undercut the allegedly defamatory implication of Ethan Klein's statement (though

20

the Court disagrees that Mr. Klein's statement carried that implication).  Because

the statements identified by Plaintiff are either non-actionable opinions or

substantially true as a matter of law, Claim III is hereby dismissed.

IV.    CONCLUSION

For the forging reasons, defendants' motion for summary judgment is

GRANTED in its entirety, and plaintiff's motion for partial summary judgment is

DENIED.

The Clerk of Court is directed to terminate the present action.

SO ORDERED.

Dated:        New York, New York
              August 23, 2017

_____
        KATHERINE B. FORREST
        United States District Judge